PAUL E. PELOQUIN *vs.* ROBERT NORTHRIDGE FURNITURE
COMPANY.[1]

Worcester. September 26, 1960. — December 8, 1960.

Present: WILKINS, C.J., SPALDING, WILLIAMS, WHITTEMORE, &
CUTTER, JJ.

*Agency,* Scope of authority or employment. *Negligence,* Heavy object.
*Evidence,* Opinion: expert.

Evidence that two experienced movers of a furniture company engaged
in picking up furniture which the tenant of an apartment located a
considerable distance from the company's store had "traded" to it were
unable alone to remove a heavy divan from the apartment warranted a
finding that the movers had implied authority from the company to
ask the tenant to help in removing the divan. [545]
Evidence of the circumstances in which an experienced furniture mover
having only one helper, in the moving of a large, heavy divan from a

[1] For an earlier phase of this litigation see *Peloquin* v. *Robert Northridge Furniture Co.* 338 Mass. 107.

piazza of a third floor apartment to the sidewalk by lowering it in a webbing over a wooden rail of the piazza, asked the tenant of the apartment to help them because they were unable to do the work alone, and in the process the rail gave way and caused the tenant to fall to the sidewalk, warranted, without expert testimony, a finding of negligence on the part of the mover toward the tenant.   [546–547]

TORT.   Writ in the Superior Court dated June 24, 1956.

The action was tried before *Paquet, J.*

*John J. O'Connell,* for the plaintiff.

*David H. Fulton,* for the defendant.

CUTTER, J.   The plaintiff seeks to recover for personal injuries alleged to have been caused by the negligence of the defendant's employees in moving furniture from the plaintiff's apartment.   Exceptions to the exclusion of certain evidence and to the direction of a verdict for the defendant are before us.   The evidence is stated in its aspect most favorable to the plaintiff.

On July 29, 1954, the defendant's experienced movers, Bell and Fleming, went to the plaintiff's third floor apartment about one mile and one half to three miles from the defendant's store to pick up furniture which the plaintiff had "traded" to the defendant.   The movers "had another job to do" and "were in a hurry."   One or more pieces were taken down the curved stairway.   They could not move the other pieces down the stairway without gouging the walls.   The remaining pieces, including two bureaus, two stuffed chairs, and a sofa, were lowered from the piazza to the sidewalk by means of a piece of tightly woven webbing thirty-five feet long, which had been used on prior occasions and which was supplied by the defendant "to allow lowering furniture from a height."   Bell braced his foot against the piazza post, moved each piece over the railing of the piazza, and gradually lowered it by hand, "the webbing at all times . . . [resting] on the rail."   The height of this railing "above the floor of the piazza was twenty-nine inches."   The "top rail was fastened to the [piazza] post by being toe nailed through the top rail and into the post" and "the post was . . . toe nailed into a wood plate on the porch floor."

The final piece to be moved was a folding divan or studio couch, "200 pounds or better," six feet long and two and one half feet wide, with six legs, and under it "a box like affair." Bell asked the plaintiff, who knew nothing about moving, to help them because they could not move the divan alone. In response to an inquiry by the plaintiff, the movers told him that "they couldn't get another man." Bell and Fleming carried the divan to the piazza and rested it on the railing with one end extending over the edge. At Bell's request the plaintiff took the left side of the divan from Fleming who went down to the second floor to hold the end of the divan as it was lowered. From the right side near the piazza post Bell showed the plaintiff how to hold the divan. He then shouted, "All right down there? O.K." With one hand on the webbing and the other on the divan, Bell pushed the divan or "gave [it] a shove" over the railing to lower it by the webbing which was wrapped around the divan and the piazza post. Two legs of the divan "landed on the" railing and it gave way. The plaintiff, the divan, and the railing fell to the sidewalk below. The piazza post[2] was forced out from the house about three and one half inches.

1. It could have been found that Bell and Fleming had at least implied authority from the defendant to obtain assistance from the plaintiff to help them where they did not have with them an adequate force of the defendant's employees. See *Lawson* v. *Royal Riding Stables, Inc.* 305 Mass. 494, 497–498; *Friedman* v. *Huck's Transfer, Inc.* 329 Mass. 362, 363. See also *Weiss* v. *Republic Pipe & Supply Corp.* 335 Mass. 422, 425–426. Cf. *Butler* v. *Mechanics Iron Foundry Co.* 259 Mass. 560, 562–563.

2. The very purpose of what was being done was to lower the divan over the piazza railing and then down to

---

[2] Exhibits indicate that this post helped to support the piazza of the floor above and that, even though forced somewhat out of position, it still rested in part on the edge of the piazza floor. The base of the post was five and five eighths inches square. The plaintiff, of course, was familiar with the condition of the post and railing, for he had lived in the apartment for seventeen years.

the sidewalk. The plaintiff "knew where the couch was going," that it "wasn't going to stay on the rail," and that "the plan was that it [the divan] should go down." At some stage of the process it would be necessary to move the divan over the railing. The testimony indicates a shout by Bell to Fleming just as or before this was done, which does not appear to have been inappropriate as a warning. There was no evidence that the method adopted of using a webbing to lower the divan was an unusual one for movers to use. See *Lydon* v. *Warehouse 13, Inc.* 335 Mass. 729, 731–732. Cf. *Lessard* v. *Kneeland,* 257 Mass. 455, 456–457. The method employed by Bell had been used successfully that morning on other pieces of furniture. No specific act by Bell has been shown to have caused the railing to break, beyond the circumstance that one of the divan's legs caught in the rail. There is no basis for inferring that Bell's act of bracing his foot against the piazza post contributed to that break. The record is obscure and confused as to the precise position of the divan while resting on the rail and as to the immediate cause of the accident.

The record, nevertheless, does present the question whether Bell used reasonable care in undertaking to lower a two hundred pound divan from a third floor piazza over a wooden rail with only one experienced assistant. The plaintiff's assistance was sought because two men could not do the work alone and because the defendant's employees, in a hurry, were apparently reluctant to return to the defendant's place of business for competent assistance. The clumsy character of the divan, the height above the ground, and the possibility of a break in the rail or a slip in handling the weight, made this an operation involving foreseeable and substantial risk of an accident. The jury might reasonably infer that the risk was materially increased when Bell attempted the task with only one trained helper. It would have been helpful if there had been evidence directed to whether the method adopted would have been proper and usual for an adequate number of professional movers. Even in the absence of such evidence the matters for deci-

sion were questions of fact, and of the application of the standard of due care to those facts, which the jury could reasonably appraise on the basis of their own experience. Expert testimony would have been appropriate but was not necessary. See *Stewart* v. *Worcester Gas Light Co., ante,* 425, 434–435.

We cannot say that there was no evidence from which the jury would be warranted in finding that Bell was negligent. A verdict should not have been directed.

3. The exceptions to the exclusion of evidence present questions not likely to arise at a new trial. They need not be discussed.

*Exceptions sustained.*