PAUL E. PELOQUIN *vs.* ROBERT NORTHRIDGE FURNITURE COMPANY.

Worcester.    September 26, 1961. — December 11, 1961.

Present: WILKINS, C.J., SPALDING, WILLIAMS, WHITTEMORE, & KIRK, JJ.

*Negligence,* Heavy object, Contributory. *Evidence,* Cumulative, Relevancy and materiality, Descriptive words, Chalk. *Practice, Civil,* Exceptions: whether error harmful; New trial. *Error,* Whether error harmful.

Evidence of the circumstances in which, while the tenant of a third floor apartment was assisting a furniture mover at the mover's request in getting a large, heavy divan over a wooden railing of the piazza of the apartment in order to lower the divan to the street by means of a strip of webbing tied to one end of the divan and wound around a post of the railing, the mover pushed the divan in such a way that the railing collapsed and the inner end of the divan swung against the tenant and threw him to the street below warranted a finding that the mover was negligent and did not require a ruling that the tenant was guilty of contributory negligence. [319–320]

Even if certain evidence offered by the plaintiff in an action was technically inadmissible, its admission was harmless where it was merely cumulative of an answer, in evidence, by the defendant to an interrogatory. [320]

At the trial of an action for injuries sustained in a fall occurring when a
wooden piazza railing over which the plaintiff was assisting an employee
of the defendant, a furniture mover, to move a large, heavy divan
collapsed, evidence that the defendant's employee, in answer to a ques-
tion by the plaintiff, had said that the railing was "plenty strong enough
to carry this divan" was admissible at least on the issue of the plaintiff's
due care.   [320]

Allowing a witness to describe as a "lunge" a push given by one to a
heavy object being lifted over a wooden piazza railing, whereby the
railing collapsed, disclosed no error.   [320]

No abuse of discretion appeared at the trial of an action for personal
injuries in allowing a medical witness for the plaintiff to use a "Chart
of Osteology" as a chalk.   [321]

Denial of a motion for a new trial of an action on the ground of certain
differences between testimony of witnesses at the trial following which
the motion was made and their testimony at previous trials disclosed no
abuse of discretion.   [321]

Tort.    Writ in the Superior Court dated July 24, 1956.

Following the decision by this court reported in 341 Mass.
543 the action was tried before *Brogna, J.* There was a
verdict for the plaintiff, and the defendant alleged excep-
tions.

*David H. Fulton,* for the defendant.

*John J. O'Connell,* for the plaintiff.

Williams, J.   This is an action of tort to recover for
personal injuries caused by the alleged negligence of the
defendant's employees.   We have had occasion to consider
the case twice before, 338 Mass. 107, and 341 Mass. 543.
In the more recent decision we sustained the exception of
the plaintiff to the direction of a verdict for the defendant.

The plaintiff lived in an apartment on the third floor of a
building at 8½ Chrome Street in Worcester.   He was mov-
ing to another apartment and had purchased new furniture
from the defendant in a transaction whereby some of the
plaintiff's old furniture was taken by the defendant in part
payment for the new.   On the morning of July 29, 1954, the
defendant sent a truck with two of its employees, Bell and
Fleming, to the plaintiff's apartment to remove the furni-
ture which it had acquired.

There was evidence that Bell was the driver of the truck
and "supervisor" of the work of removal.   Fleming was
his assistant.   After taking a bureau down the stairway

which was narrow, with eight right angle turns, Bell de-
cided that it would be easier to remove the rest of the furni-
ture by lowering it to the street from the front porch of the
apartment.   He had brought in his truck a thirty foot strip
of webbing two and one-half to three inches in width.   With
this webbing he and Fleming proceeded to lower several
articles of furniture to the street.   There remained a studio
divan which was convertible into a bed by folding down the
back and removing the arms.   It was about six feet long,
two and one-half feet wide, and was estimated to weigh
from 125 to 200 pounds.   It had six legs about four inches
long, two at each end and two in the middle.   The movers
raised the divan so that the section between the legs at one
end and the middle legs rested on the railing of the porch.
One end of the webbing was tied to the divan and the other
end held by Bell, after winding it once or twice around a
post of the railing.   The plaintiff, who had until then been
absent, at that time returned to the apartment.   Bell sent
Fleming down to the porch on the second floor to help guide
the divan in its descent and asked the plaintiff to assist in
steadying the divan.   The plaintiff consented and took a
position on the left of the divan as one faces the street.
Bell was on the right with his foot against the post, his
shoulder against the divan, and holding the webbing with
one hand.   He "wiggled" the divan to get it straight be-
fore lifting it over the railing.   In the process he gave it a
push, described by the plaintiff's daughter as a "lunge,"
and the railing, on which the divan was leaning, collapsed.
The porch end of the divan swung to its left, striking the
plaintiff and throwing him to the street below.

   At the conclusion of the evidence a motion of the defend-
ant for a directed verdict was denied and the defendant
excepted.   The jury returned a verdict for the plaintiff.

   "It could have been found," as we said in a former opin-
ion on substantially the same evidence, "that Bell and
Fleming had at least implied authority from the defendant
to obtain assistance from the plaintiff." *Peloquin* v. *Rob-
ert Northridge Furniture Co.* 341 Mass. 543, 545, and cases
cited.   It could not be ruled that the plaintiff was guilty of

contributory negligence or that there was no evidence of negligence on the part of the defendant's employees. These were questions of fact for the jury. They could find that the accident was caused by Bell wiggling the divan in such a manner that its middle legs, which were on the inside of the railing, were pushed against it with such force that it was caused to break. Bell's conduct plainly could be found to be negligent but we cannot accede to the defendant's contention that if it were so found the plaintiff must be held to have participated in his negligence. The evidence fails to show that the plaintiff had any reason to expect that Bell in preparing to lift the legs of the divan over the railing would manipulate it in such manner that it would create a dangerous situation.

The defendant excepted to the admission of testimony by the plaintiff's daughter that she heard Bell and Fleming say that it was impossible to move the remainder of the furniture by the stairway and that they would have to do it by the front porch. The defendant had admitted in answer to an interrogatory that the men decided ''it would be easier to lower the rest of the furniture down over the outside of the building.'' The answer was in evidence and the testimony to which exception was taken was substantially cumulative. If technically inadmissible, the defendant was not harmed. *Bendett* v. *Bendett,* 315 Mass. 59, 65–66, and cases cited. There was no reversible error.

No error appears in the admission of other evidence to which the defendant excepted. The daughter testified that her father asked Bell if he thought the railing was strong enough to ''carry this heavy divan'' and Bell answered, ''We've been doing it all morning and nothing's happened so far. It's plenty strong enough to carry this divan.'' The question and answer were material to the question of the plaintiff's due care if for no other reason. Other testimony by the same witness that the push given to the divan by Bell was a ''lunge'' was allowed to stand. It was a proper descriptive term meaning, according to dictionary definition, a sudden thrust.

A medical witness of the plaintiff in testifying to the plaintiff's injuries was permitted to use a "Chart of Osteology" as a chalk. Permission to use a chalk is a matter of judicial discretion. The chart was exhibited on the blackboard after a conference at the bench and nothing appears in the record to show that its use was improper. *Everson* v. *Casualty Co. of America,* 208 Mass. 214, 220–221.

The defendant excepted to the denial of its motion for a new trial on the ground that the verdict was against the weight of the credible evidence. It contended that evidence presented by several of the plaintiff's witnesses was so greatly at variance with their testimony at previous trials that it was unworthy of belief and that justice required another trial. An examination of the cross-examination of these witnesses shows certain differences between their testimony at the instant trial and at the previous trials; but not of such nature that it can be said the judge erred in denying the defendant's motion.

*Exceptions overruled.*