## CLAFLIN, Respondent, v. DEPARTMENT OF NATURAL RESOURCES, Appellant.

*No. 245. Argued January 4, 1973.—Decided April 20, 1973.*
(Also reported in 206 N. W. 2d 392.)

184

For the appellant the cause was argued by *Robert B. McConnell,* assistant attorney general, with whom on the briefs was *Robert W. Warren,* attorney general.

For the respondent there was a brief by *Frank A. Ross, Jr.*, and *Ross, Stevens, Pick & Ross,* all of Madison, and oral argument by *Frank A. Ross, Jr.*

WILKIE, J.   The first issue raised on this appeal is whether the circuit court had subject matter jurisdiction under sec. 227.16 (1), Stats., to consider Claflin's petition for review.

Specifically, the DNR contends that there was no right for Claflin to seek a rehearing from the DNR and that accordingly when Claflin filed his petition for review in circuit court it was not filed within thirty days of the order sought to be reviewed; (it was not filed until October 6th, eighteen days too late according to the contention of the DNR).

The answer to this DNR contention is that Claflin did have a right to request a rehearing of the DNR and when that request for a second rehearing was not granted, Claflin was then free to file his petition for review in circuit court. This he did within thirty days after Claflin had reason to believe his request for rehearing submitted on September 3d was not being honored.

Sec. 227.16 (1), Stats., provides in part:

"(1) Except as otherwise specifically provided by law, any person aggrieved by a decision specified in s. 227.15 and directly affected thereby shall be entitled to judicial review thereof as provided in this chapter.   Proceedings for review shall be instituted by serving a petition therefor personally or by registered mail upon the agency or one of its members or upon its secretary or clerk, and by filing such petition in the office of the clerk of the circuit court for Dane county (unless a different place of review is expressly provided by law), all within 30 days after the service of the decision of the agency upon all parties as provided in s. 227.14 *or in cases where a rehearing is requested within 30 days after service of the order finally disposing of the application for such rehearing, or within 30 days after the final disposition by operation*

*of law of any such application for rehearing. . . ."* (Emphasis supplied.)

The right of appeal from a statutory administrative tribunal in a ch. 227 proceeding is dependent upon strict compliance with this statute. One of the purposes of sec. 227.16 (1), Stats., is to maintain the orderly administration of the judicial process. But another purpose and policy of ch. 227 is to afford an aggrieved party every opportunity to get into court and secure a reversal upon any grounds that the statute may countenance so long as he apprises his adversaries of the nature of his grievance at least by the time the appeal comes on for hearing.[1]

Upon a careful reading of sec. 227.16 (1), Stats., we are satisfied that where an aggrieved person to a decision as specified in sec. 227.15 requests a rehearing from that agency's order he has thirty days after the final disposition by operation of law of any such application for rehearing to timely seek a petition for review in circuit court.[2] This interpretation as giving "authority" to apply for or request a rehearing is evidenced by the language in sec. 227.15, which states the agency's orders "shall be subject to judicial review as provided in this chapter . . ." and in sec. 227.16 (1), where it provides "any person aggrieved by a decision specified in sec.

---

[1] *Hamilton v. ILHR Department* (1973), 56 Wis. 2d 673, 203 N. W. 2d 7; *Brachtl v. Department of Revenue* (1970), 48 Wis. 2d 184, 179 N. W. 2d 921; *Monahan v. Department of Taxation* (1963), 22 Wis. 2d 164, 125 N. W. 2d 331.

[2] "227.15 **Judicial review; orders reviewable.** Administrative decisions, which directly affect the legal rights, duties or privileges of any person, whether affirmative or negative in form, except the decisions of the department of revenue, the commissioner of banking and the commissioner of savings and loan, *shall be subject to judicial review as provided in this chapter; but if specific statutory provisions require a petition for rehearing as a condition precedent, review shall be afforded only after such petition is filed and determined."* (Emphasis supplied.)

227.15 . . . shall be entitled to judicial review thereof as provided in this chapter." It is completely reasonable and logical to deduce from sec. 227.16 (1) that one can first "request a hearing" without jeopardizing his subsequent right of review in circuit court.

The DNR maintains here that sec. 227.16 (1), Stats., provides no such "authority" for rehearings. Rather, that section merely "recognizes" the right of the agency to accord a hearing if it so desires under its authorizing statute. That statute is sec. 227.08, which provides:

"227.08 **Rules pertaining to procedure.** Each agency shall adopt rules governing the form, content, and filing of pleadings, the form, content and service of notices, the conduct of prehearing conferences, and other necessary rules of procedure and practice."

From this the DNR surmises that since there is no provision in its code authorizing a petition for rehearing the instant order, Claflin is not entitled to a "requested rehearing." Therefore, the DNR contends Claflin should have (but did not) file a petition for review of the DNR's order within thirty days after service of the decision. The decision was served on August 19, 1970, and Claflin did not petition for review until October 6, 1970, or forty-eight days after the order objected to. The DNR argues that to construe sec. 227.16 (1) any differently would cause chaos and jeopardize every administrative decision since 1945. The DNR adds that if this section is interpreted as "authorizing" rehearings there will be no effective time limits within which such requests may be brought on for hearing since the DNR has no enacted authorizing statute, and there is no method for disposing of such requested rehearings by operation of law where the agency fails to act.

But to give effect to the DNR's interpretation would be to do away with the jurisdictional basis for a rehearing, a result which sec. 227.16 (1), Stats., does not envision.

This is especially true in light of the provisos in secs. 227.15 and 227.16 (1).

In this case it is clear that the department has changed its position along the line. When Claflin first sought a permit in 1966 he was under the procedural rules of the Public Service Commission. Under sec. 196.405, Stats., the aggrieved party had to seek a rehearing with the commission before review could be procured in circuit court. When the petition was initially denied on June 30, 1967, Claflin on July 20th (twenty days later) made an application for a rehearing. If the DNR had not become the successor of the commission on July 1, 1967, there would be no doubt that the application for rehearing before the commission was proper and timely. Claflin would have satisfied the requisites of sec. 196.405 which would have enabled him to seek timely review in circuit court. But the DNR took control and on August 9, 1967 (twenty days after the requested rehearing), granted the application to "reopen" the case for further evidence and for a "rehearing." [3] In granting the application it is evident that the DNR actually exercised its powers under sec. 227.08.

Two subsequent hearings were held and the permit was again denied on August 19, 1970. Fifteen days later, on September 3d, Claflin requested a rehearing with the department, apparently relying either on the language of sec. 227.16 (1), Stats., or on the DNR's prior actions. The DNR made no response, so on October 6th Claflin petitioned for review in the circuit court.

---

[3] Sec. 196.405, Stats., states that an application for rehearing must be sought within twenty days after service of the commission's decision. Thereafter the commission must act within twenty days on the application or it is presumed to be denied by operation of law. It is reasonable to surmise that it is more than "just coincidental" that Claflin's petitioning and the department's actions are directly in accord with sec. 196.405.

The crux of the jurisdictional issue here is whether Claflin was entitled to a DNR rehearing once the function of granting or denying such a permit as Claflin desired was transferred from the PSC to the DNR.

If one assumes that the DNR was following sec. 196.405, Stats., then it is evident that the DNR has arbitrarily changed its course when it now claims there was no rehearing. For the DNR to declare first that it has the power and jurisdiction to give the initial rehearing, and second to deny a subsequent application for a requested rehearing, and third to state it never gave Claflin any rehearing, and finally to maintain it has no codified authorizing provisions to grant any type of rehearing under sec. 227.16 (1) unless it so desires by enacting such provisions, is inconsistent and unfair to aggrieved persons in a position such as Claflin's. The DNR is the one that controlled the disposition of the proceedings, not Claflin. It is the DNR which put Claflin in this quandary which prevented him from assessing his rights. It would be unfair for Claflin to suffer because the DNR keeps changing its position.

Claflin was entitled to a rehearing and the circuit court had subject matter jurisdiction to rule on the merits of his petition for review which, under the circumstances, was timely filed under sec. 227.16 (1), Stats.

The sole issue on the merits is whether the circuit court erred in finding that the DNR's order was unsupported by substantial evidence in view of the entire record.[4]

The factual issues in dispute are: finding of fact No. 6, which provides in part:

". . . The construction and maintenance of the boathouse here involved has impaired the natural scenic beauty of this shoreline and is detrimental to the public interest."

---

[4] *Reinke v. Personnel Board* (1971), 53 Wis. 2d 123, 135, 191 N. W. 2d 833, applying sec. 227.20 (1), Stats.

finding of fact No. 7, which provides in part:

". . . The shoreland management program approved by the Natural Resources Board in Wisconsin Administrative Code DNR 115.03 provides 'Boathouses or similar structures which require a waterfront location shall not be used for habitation nor extend toward the water beyond the ordinary high waterline.' This boathouse extends 23½ feet lakeward from the ordinary high waterline."

and finding of fact No. 11, which states:

"The structure constitutes an appropriation of the publicly owned lakebed for the private use and convenience of a riparian owner. Such unnecessary appropriation of lakebed is not in the public interest."

In *Hixon v. Public Service Comm.*[5] the hearing with respect to the granting or denying of permits under sec. 30.12 (2) (a), Stats., was held to be legislative. Sec. 30.12 (2) (a) prescribes that structures may be permitted

". . . to a limited extent, but only when the two standards are met which the legislature prescribes, to wit, that the proposed deposit or structure is 'not a material obstruction to navigation' and is 'not detrimental to the public interest.'
"The job of applying these two standards in each particular situation was delegated to the public service commission." [6]

No question is raised here as to the finding that the structure is not a material obstruction to navigation. The structure does not reduce effective flood flow. The whole controversy concerns the finding by the DNR that the boathouse is detrimental to the public interest.

It is apparent that the DNR gave primary consideration to the provision of its own rule, NR 115.03, which was

---

[5] (1966), 32 Wis. 2d 608, 146 N. W. 2d 577.
[6] *Id.* at page 620.

adopted in August, 1970 (but not effective until September 1, 1970), in that by finding No. 7 the DNR specifically applied the rule which effectively prohibits boathouses which, as here, extend toward the water beyond the ordinary high water line. The rule provides as follows:

"Boathouses or similar structures which require a waterfront location shall not be used for habitation nor extend toward the water beyond the ordinary high waterline." [7]

It was incorrect for the DNR to apply this general rule which was adopted long after the hearings in connection with this permit were held, and while the DNR still had this permit application under advisement.

The merits of the application should have been considered in the light of the provisions of sec. 30.12 (2) (a), Stats., and without regard to the general policy incorporated in the DNR's own administrative code, NR 115.03. Since NR 115.03 is not applicable to Claflin's application for a permit we do not reach the question of the validity of that rule.

Under the circumstances, we must remand the matter to the DNR to consider all of the evidence without regard to NR 115.03, and for the purpose of entering findings with respect to the permit applied for. True, there is testimony by a variety of neighbors, builders, architects, an assessor, and by Claflin himself, supporting a determination that the boathouse was well designed and maintained; that it is not an eyesore and that, indeed, it does not impair natural beauty; that the construction of a boathouse on the shore would be very costly and difficult. On the other hand, there is testimony that the boathouse does impair natural beauty.

The DNR should reach a fresh determination without giving any consideration to NR 115.03. The essential determination must be whether this particular boathouse,

---

[7] 6 Wis. Adm. Code, sec. NR 115.03 (2) (b) 3.

in this precise situation, is "detrimental to the public interest." If we were satisfied that only one determination could have been made and that in favor of granting the permit with the accompanying finding that the boathouse is not detrimental to the public interest, we would affirm the trial court's determination that the finding of the DNR is unsupported by substantial evidence. However, in view of the competing evidence in the record, we must remand for a new determination by the DNR. Specific structures may be determined to be detrimental to the public interest on the ground that they impair natural beauty. This is a proper basis for denial of a permit. The natural beauty of our northern lakes is one of the most precious heritages Wisconsin citizens enjoy. It is entirely proper that that natural beauty should be protected as against specific structures that may be found to mar that beauty.

*By the Court.*—Judgment reversed and cause remanded for further proceedings not inconsistent with this opinion.