WISCONSIN TELEPHONE COMPANY, Respondent, v. DE-PARTMENT OF INDUSTRY, LABOR & HUMAN RELA-TIONS, Appellant.

*No. 488. Argued April 7, 1975.—Decided May 6, 1975.*
(Also reported in 228 N. W. 2d 649.)

346

For the appellant the cause was argued by *Charles D. Hoornstra,* assistant attorney general, with whom on the briefs was *Robert W. Warren,* attorney general, and *Bronson C. La Follette,* attorney general.

For the respondent there was a brief by *John M. Clarke* and *Philip L. Wettengel,* attorneys, and *A. Thomas Breit*

of counsel, all of Milwaukee, and oral argument by *Mr. Clarke.*

A brief amicus curiae was filed by the Wisconsin Civil Liberties Union Foundation, *Peter D. Goldberg* of Milwaukee, of counsel.

WILKIE, C. J. This is a sex discrimination case.

The judgment of the trial court set aside an order of the appellant Department of Industry, Labor & Human Relations, finding the respondent Wisconsin Telephone Company's maternity leave policies to violate secs. 111.32 (5) (g) 1 and 111.325, Stats., prohibiting sex discrimination. The court never reached the merits, but instead ruled that the proceedings before the department contained three fatal procedural errors: (1) The telephone company received inadequate notice of the issues; (2) only one of three commissioners of the department was present during oral argument; and (3) the department's decision was based upon sex discrimination "guidelines" that were invalid because not promulgated in accord with the Administrative Procedure Act, ch. 227, Stats. The court set aside the department's order and remanded with instructions to dismiss the discrimination complaint filed by one of the telephone company's employees. We conclude that the department did commit reversible procedural errors and therefore affirm the trial court's judgment, but with instructions that the case be remanded to the department for further proceedings rather than dismissal.

The complainant, Karen Smith, is a blind employee of the telephone company who in November of 1971 signed a request for a six-month pregnancy leave. She testified that she signed involuntarily upon threat of discharge. She testified she told her supervisor she wanted to take no leave at all, but in any event, desired to come back to work six weeks after childbirth. She stated that her

supervisor insisted upon a minimum leave period of six months. The supervisor testified that Smith came to her for guidance, told her she was pregnant, and asked "what the normal procedures were in a case like that." The supervisor testified she said that normally, pregnant employees take a six-month maternity leave and she recommended that Smith take such a leave. She admitted never telling her this leave time was not mandatory or a shorter leave could be taken, because, she said, Smith "did not request a leave for a shorter period of time."

The leave commenced November 21, 1971, the child was born on December 14th, and Smith terminated her parental rights on January 18, 1972. On January 25th her doctor found her in good health and able to return to work. On that date Smith requested re-employment but was told no work was available. Subsequent to January 25th she contacted the company once a week asking to be re-employed. She applied for unemployment compensation but was turned down because she was on voluntary leave. She asked the state employment service to help her find another job but the service's efforts were fruitless.

On April 14, 1972, she filed a sex discrimination complaint with the department, containing the following statement:

"I was employed as a C. A. M. A. operator for three years. In November 1971, I took a leave to give birth to a child. At that time I signed a paper which said that I was taking a six month leave. The paper said it was voluntary but actually, I had no choice. After the baby was born in December, I informed the employer that I was able to return to work in January. I was told that they didn't need me and that I couldn't come back until May 20 when my leave ends. They even said I might have to wait longer. I am not receiving Unemployment Compensation even though I am able to work. I have no income coming in. My doctor has advised me to return to work as soon as possible and because of my blindness it is difficult to find another job. I believe that my employer's policy regarding maternity leave is discriminatory and in

violation of the prohibition against sex discrimination in Wisconsin's Fair Employment Law ss 111.31–111.37, and Title 7 of the 1964 Civil Rights Act."

She returned to work at the telephone company ten days later, on April 24, 1972, approximately one month before the end of her six-month leave period.

The department found probable cause that discrimination had occurred and after attempts at conciliation failed, scheduled a hearing on August 2, 1972. The notice of hearing, which was attached to a copy of the complaint, merely stated as to the issues to be raised at the hearing:

". . . The complainant charges that the respondent committed an act of discrimination due to sex, within the meaning of Chapter 111 of the Wisconsin Statutes."

In the hearing itself the telephone company presented just two witnesses, whose testimony, on direct examination, was limited to the question whether the company had a fixed or flexible leave policy for pregnant women and whether Karen Smith had been forced to take a six-month leave of absence against her will. The complainant, on the other hand, presented testimony from three witnesses concerning not only the fixed or flexible leave policy, but also the company's policy of providing to other temporarily disabled employees certain disability payments, free insurance coverage, and seniority credit not provided employees on pregnancy leave. While not directly presenting any such evidence itself, the telephone company did establish, on redirect examination of one of its own witnesses in response to matters raised on cross-examination, that absence due to abnormal complications of pregnancy was treated like all other medical disabilities. Following the hearing, the hearing examiner issued recommended findings of fact, conclusions of law, and order and relief that were adopted with only minor changes by the commissioners. As finally adopted, they read:

"Based upon the record and file herein, and upon the Hearing Agent's recommendations, and upon the oral argument of counsel, the Department makes the following:

## "Findings of Fact

"(1) That the Complainant Karen Smith has been employed by the Respondent Wisconsin Telephone Company since December 16, 1968 as a CAMA operator (the only job she can perform because she is blind).

"(2) That in October 1971 the Complainant became aware she was pregnant; that she informed her immediate supervisor, Mary Oliver, of her pregnancy and she inquired as to the Respondent's 'normal' maternity leave procedures; that Mary Oliver recommended that a six-month period was a normal period for a maternity leave; that Complainant was not told that she could take a maternity leave of less than six months despite her indication that she would prefer a shorter leave; that in fact, she signed a maternity leave request prepared by Mary Oliver for the period November 19, 1971 through May 20, 1972.

"(3) That Complainant began her leave on November 19, 1971; that her child was born on December 14, 1971; that Complainant's parental rights to said child were terminated on January 18, 1972; that on January 25, 1972 Complainant was examined by her doctor and was found medically able to return to work; that she informed the Respondent of her medical readiness and availability to return to work; that the Complainant did not return to work with the Respondent until April 24, 1972 because there was a lack of available work for a CAMA operator in her department.

"(4) That Respondent's official maternity leave policy states that a leave should be for a 'reasonable period of time;' that the average length of maternity leaves for the period October 1970 through September 1, 1971 was 5 months and 23 days; that the most frequent period of leave during the period December 1971 to July 1972 was six months; that maternity leaves can be granted for a fixed period of more or less than six months.

"(5) That persons who require time away from work for temporary disability other than temporary disability

due to pregnancy and childbirth need not request a leave of absence for a fixed period of time; that a woman who requires time away from work because of temporary disability due to pregnancy and childbirth must request a leave of absence for a fixed period of time.

"(6) That a woman on maternity leave (leave of absence because of temporary disability due to pregnancy and childbirth) accrues seniority for only the first month of absence from work; that persons disabled from working by any other temporary disability accrue seniority for the entire period of disability.

"(7) That for the first seven days of any temporary disability other than temporary disability due to pregnancy and childbirth, persons receive payments from their department according to seniority; that a woman on maternity leave is not eligible to receive such payments.

"(8) That disability benefits are paid by the Respondent after the seven-day period to persons disabled from work by temporary disabilities other than temporary disability due to pregnancy and childbirth, according to their seniority; that a woman on maternity leave is not eligible to receive such payments.

"(9) That women on maternity leave may continue their basic medical insurance coverage but at their *own* expense; that persons disabled from work by temporary disabilities other than temporary disability due to pregnancy and childbirth have their insurance expense borne by the Respondent.

"(10) That persons disabled from work by temporary disabilities other than temporary disability due to pregnancy and childbirth may return to work as soon as they become medically able to do so; that a woman on maternity leave may return to work upon becoming medically able only if there is work available prior to the expiration of the maternity leave.

"Based upon the Findings of Fact, the Department makes the following:

## *"Conclusions of Law*

"(1) That the Respondent Wisconsin Telephone Company is an employer within the meaning of the Wisconsin

Fair Employment Law, Section 111.32 (3) (a), Wisconsin Statutes.

"(2) That to apply different terms and conditions of employment to temporary disability due to pregnancy and childbirth than are applied to other temporary disabilities, whether the result of a written or unwritten employment policy or practice, has a disparate impact on female employees and violates Sections 111.32 (5) (g) 1 and 111.325 in a manner not excepted by Section 111.32 (5) (d) of the Wisconsin Statutes.

"(3) That the disparate treatment by the Respondent of female employees who are temporarily disabled from work due to pregnancy and childbirth is not justified by any business necessity of record.

"Based upon the Conclusions of Law, the Department makes the following:

### "Order and Relief

"(1) That the Respondent credit the Complainant with such seniority as would have accrued to her record had her period of disability been treated the same as any other temporary disability and not as a maternity leave of absence.

"(2) That Respondent pay to the Complainant the sum which she would have received as disability benefits had her period of disability (November 19, 1971 to January 25, 1972) been treated the same as any other temporary disability and not as a maternity leave of absence; that such sum shall include the departmental pay which is received by employees for other temporary disabilities during the first seven days of disability.

"(3) That the Respondent Wisconsin Telephone Company be ordered to apply the same terms and conditions of employment applicable to all other temporary disabilities to temporary disability due to pregnancy and childbirth.

"(4) That the Respondent inform all its employees, in writing, of the terms of paragraph #3 herein, and communicate to the Department of Industry, Labor and Human Relations its compliance with this order within 90 days from the date of its issuance.

"Dated at Madison, Wisconsin, this 5th day of January, 1973."

The commissioners thus placed primary emphasis upon maternity leave benefits as opposed to the actual maternity leave itself.

The department appeals from the trial court judgment overturning the department's order.

The three basic procedural issues presented on this review which form the basis for a reversal of the department's order are as follows:

I. *Did the telephone company receive adequate notice that pregnancy leave benefits would be an issue?*

II. *Was the telephone company afforded adequate oral argument where only one commissioner of the department was physically present?*

III. *Did the department rely upon an invalid sex discrimination guideline in reaching its decision?*

*Notice.*

Sec. 111.36 (3) (a), Stats., provides:

"(3) (a) If the department finds probable cause to believe that any discrimination has been or is being committed, it shall immediately endeavor to eliminate the practice by conference, conciliation or persuasion. In case of failure so to eliminate the discrimination, the *department shall issue and serve a written notice of hearing, specifying the nature of the discrimination which appears to have been committed,* and requiring the person named, hereinafter called the 'respondent', to answer the complaint at a hearing before the department. The notice shall specify a time of hearing not less than 30 days after service of the complaint, and a place of hearing within either the county of the respondent's residence or the county in which the discrimination appears to have occurred. The testimony at the hearing shall be recorded or taken down by a reporter appointed by the department." (Emphasis supplied.)

Sec. 227.09 of the Administrative Procedure Act provides:

"Every party to a contested case shall be given a clear and concise statement of the issues involved."

The notice of hearing by the department merely informed the company it had been charged with an "act of discrimination due to sex, within the meaning of Chapter 111 of the Wisconsin Statutes." A copy of the complaint was attached to the notice. The complaint alleged that the company's "policy regarding maternity leave is discriminatory," and specified as the "act" of discrimination the fact that the company refused to rehire the complainant as soon as she was medically able to return to work. Neither the notice of hearing nor the complaint attached contained any specific reference of any kind to the company's pregnancy leave benefits policy.

The department argues the following language in the complaint put the company on notice that the benefits policy would be an issue:

"I am not receiving Unemployment Compensation even though I am able to work. I have no money coming in."

We disagree for two reasons. First, this is hardly a "clear and concise statement" of the benefits issue. Second, in its initial determination of probable cause, the department characterized Karen Smith's complaint as follows:

"Complaint was filed April 14, 1972, charging that Respondent had discriminated against complainant in her conditions of employment because of her sex *by requiring her to remain on maternity leave for a specified period of time.*" (Emphasis supplied.)

The balance of the initial determination [1] detailed facts relating to the circumstances surrounding Karen Smith's

---

[1] The initial determination by the department read as follows:

"Complaint was filed April 14, 1972, charging that Respondent had discriminated against Complainant in her conditions of employ-

acceptance of maternity leave and the company's policy regarding duration of leaves and re-employment prior to

ment because of her sex by requiring her to remain on maternity leave for a specified period of time.

"Respondent denies that it discriminated against Complainant on the basis of sex or that her sex was the reason for the duration of the leave.

"It is initially determined:

"1. That Respondent is an employer within the meaning of Wisconsin's Fair Employment Law ss 111.31–111.37.

"2. That in October, 1971, Complainant informed her employer that she was pregnant.

"3. That on November 11, 1971, Complainant began a maternity leave after stipulating in writing that said leave would terminate on May 20, 1972, at which time Complainant would be eligible to return to work.

"4. That Respondent contends that because of Complainant's uncertainty in the situation that she voluntarily agreed in writing to remain on maternity leave until May 20, 1972.

"5. That Complainant contends that although she did sign a request for leave, that she was given to understand that such a course was the only one available to her.

"6. That Respondent's position is that due to economic considerations and not Complainant's maternity leave, it was unable to immediately re-employ Complainant when she requested immediate return to work in January, 1972.

"7. That such economic considerations resulted from the fact that Complainant is able to perform only one job with Respondent and due to a decrease in work volume there was not enough work to necessitate her return to full time work.

"8. That Respondent contends that but for such economic considerations, Complainant would have been re-employed immediately upon request.

"9. That Respondent does not, as a matter of course require that an employee requesting leave take such leave for a specified time period.

### *"Conclusion*

"For purposes of probable cause only, it is reasonable to assume that Complainant's acceptance of the maternity leave of absence from November 11, 1971, to May 20, 1972, whether

the leave's expiration. Thus, based upon the department's own interpretation of the complaint the telephone company had every reason to assume that the leave policy itself, rather than benefits available to those on leave, would be the only issue. It cannot be disputed that these are two separate and distinct legal issues [2] and that the telephone company was entitled to notice as to both if both were to be raised at the hearing.

The lack of adequate notice is reflected in the case presented at the hearing by the telephone company. As we have previously indicated, only two witnesses appeared on its behalf, the testimony of both on direct examination being limited to a discussion about the flexible character of the pregnancy leave policy and about the facts surrounding Karen Smith's acceptance of a six-month leave. The complainant did present testimony concerning pregnancy leave disability payments, insurance coverage, and seniority credit, and the telephone company did elicit on redirect examination of one of its witnesses testimony concerning benefits available to those with abnormal complications of pregnancy. However, it is manifest that the question of pregnancy leave benefits was not fully litigated and that this deficiency was not due to neglect of the telephone company, but rather to inadequate notice. It must be noted further that the hearing examiner found as a conclusion of law that the telephone com-

voluntary or involuntary, had the effect of discriminating against her because of her sex in violation of Wisconsin Fair Employment Law ss 111.31–111.37.

"Dated at Milwaukee, Wisconsin this 5th day of May, 1972."

[2] Compare, *e.g., Cleveland Board of Education v. LaFleur* (1974), 414 U. S. 632, 94 Sup. Ct. 791, 39 L. Ed. 2d 52 (mandatory fixed pregnancy leave policy for teachers held unconstitutional as due process violation) with *Geduldig v. Aiello* (1974), 417 U. S. 484, 94 Sup. Ct. 2485, 41 L. Ed. 2d 256 (pregnancy exclusion from state disability insurance program held not to violate equal protection clause).

pany's policy of treating pregnant employees differently from other temporarily disabled employees "is not justified by any business necessity of record." [3] After the hearing examiner had reached this conclusion and it became evident that the department considered the telephone company's whole pregnancy benefit policy to be in issue, the company requested the commissioners for an opportunity to present evidence of business necessity as to the benefits policy including such matters as cost of benefits and number of pregnant employees who work for a short time, take leave, and never return. The request was denied without opinion, and the commissioners adopted the hearing examiner's conclusion concerning lack of business necessity evidence.

The facts in the instant case closely resemble those of *General Electric Co. v. Wisconsin Employment Relations Board* [4] where the union filed an unfair labor practice complaint charging General Electric with transferring certain employees against their will and contrary to collective bargaining agreement. The Employment Relations Board found the transfers themselves valid but held that the employer violated the wage provisions of the contract in failing to compensate the employees for earnings lost as a result of the transfer. On judicial review, General Electric argued it had inadequate notice of the wage issue. This court agreed and remanded the case to the trial court with instructions that the board be ordered to hold a new hearing on the claim for wages. The court noted that pleadings did not expressly raise this issue

[3] Consideration of this factor was presumably based upon sec. 111.32 (5) (d), Stats., which provides:

"(d) The prohibition against discrimination because of sex does not apply to the exclusive employment of one sex in positions where the nature of the work or working conditions provide valid reasons for hiring only men or women, or to a differential in pay between employes which is based in good faith on any factor other than sex."

[4] (1958), 3 Wis. 2d 227, 88 N. W. 2d 691.

and that while some evidence presented by the union pertained to lost wages, "No evidence was adduced by the company with reference to wages or incentive pay." [5] The court further said:

". . . Matters which the company probably could have presented, had it been aware that an issue with respect to incentive pay existed, were not offered. It is manifest that the company was not cognizant that the union considered the matter of incentive bonus pay as an issue under the pleadings, nor that the board would treat that matter as an issue for its determination. While it is recognized that pleadings are to be treated as flexible, and that they are to be liberally construed in administrative proceedings, nevertheless in view of the fact that there was no direct reference in the pleadings to any claim for incentive bonus pay, and particularly by reason of the fact that the company could well have been justified in believing that such matter was not in issue . . . we are impelled to conclude that in the interest of justice the cause must be remanded to the board where opportunity is to be granted for a full hearing with respect to the issue." [6]

Concerning General Electric's right to notice, the court said:

"The principle of fair play is an important factor in a consideration of due process of law. Parties in a legal proceeding have a right to be apprised of the issues involved, and to be heard on such issues. A finding or order made in a proceeding in which there has not been a 'full hearing' is a denial of due process and is void." [7]

Similarly in the recent case of *Chicago, M., St. P. & P. RR. Co. v. ILHR Dept.*,[8] the court held:

[5] *Id.* at page 245.

[6] *Id.* at pages 245, 246.

[7] *Id.* at page 241.

[8] (1974), 62 Wis. 2d 392, 399, 215 N. W. 2d 443. *See also: Durkin v. Board of Police & Fire Comm.* (1970), 48 Wis. 2d 112, 180 N. W. 2d 1.

"Findings and recommendations of the department resulting from said hearing must not be broader than that specified in the notice hearing."

We conclude that the telephone company received inadequate notice that the issue of pregnancy leave benefits would be adjudicated by the department.

### Oral argument before the commissioners.

The parties agree that under sec. 227.12, Stats., the telephone company was entitled to "argue . . . orally and in writing before all the members who are to participate in the decision." It is conceded that only one of the three commissioners was present during oral argument; the other two heard the argument on a tape recording. We conclude that the physical presence of only one commissioner is insufficient to satisfy the requirement of sec. 227.12.

The department argues that physical presence of all the commissioners is not required. It points out that it is virtually impossible "to argue . . . *in writing* before" the commissioners if the word "before" is taken to mean physical presence while the brief is being written. Therefore, it argues that the commissioners must only read the briefs. Thus, the department contends, the requirement of arguing "orally . . . before" the commissioners is satisfied if the arguments are merely heard on tapes.

The department's position would emasculate the oral argument requirement. Under its theory, none of the commissioners would have to be present and surely this cannot be what the legislature intended in sec. 227.12, Stats. Moreover, the value of the oral argument would be greatly diminished if the commissioners became mere passive listeners to a recording.

The opportunity for oral argument, when called for, should be accepted by arguing openly to the body which

is to make the decision. Oral exposition with the questioning that the decision makers engage in presents in many ways a golden opportunity to convince those who decide the matter and affords a "last clear chance" for sharpening up the issues between the complaining parties.

We conclude that the oral argument requirement cannot be satisfied by all the commissioners merely listening to a tape recording.

How many commissioners then must be present at this oral argument? Sec. 15.06 (6), Stats., not cited by the parties, provides:

". . . A majority of the membership of a commission constitutes a quorum to do business . . . ."

A similar requirement is imposed upon boards,[9] examining boards,[10] councils,[11] and the supreme court.[12] Additionally, this court has held that in the absence of statute, at common law, "a majority of the membership of a board or a committee constitutes a quorum for the transaction of business, and a majority vote of the quorum is decisive."[13]

Certainly hearing oral argument as required by statute constitutes "doing business." Thus we conclude that to satisfy the oral argument requirement of sec. 227.12, Stats., at least two commissioners must be physically present to hear the argument. If this requirement is met, the absent third commissioner may participate in the decision if he does, in fact, listen to a tape recording and read the briefs.

[9] Sec. 15.07 (4), Stats.

[10] Sec. 15.08 (4), Stats.

[11] Sec. 15.09 (4), Stats.

[12] Wis. Const. art. VII, sec. 4.

[13] *Endeavor-Oxford Union Free High School Dist. v. Walters* (1955), 270 Wis. 561, 569, 72 N. W. 2d 535. *See also:* sec. 990.001 (8m), Stats. ("A quorum of a public body is a majority of the number of members fixed by law.")

*The department's sex discrimination guideline.*

In August, 1971, the department promulgated a proposed rule, IND 88.20, which provided in part:

"Employes on maternity leave shall be treated in the same manner as employes on leave for any other temporary disability in relation to pension plans, vacations, seniority, insurance coverage, and any other peripheral benefit."

The rule was to take effect June 1, 1972, after appropriate notice, public hearings, and publication. In May, 1972, the joint legislative committee for review of administrative rules held a hearing to consider the rule pursuant to sec. 13.56, Stats., which provides in part:

"(2) REVIEW OF RULES AND CERTAIN GUIDELINES BY COMMITTEE. The committee shall promote adequate and proper rules, statements of general policy and interpretations of statutes by agencies and an understanding upon the part of the public respecting such rules, statements and interpretations. . . . It may hold public hearings to investigate complaints with respect to . . . rules and portions of rules if it considers such complaints meritorious and worthy of attention and may, on the basis of the testimony received at such public hearings, suspend any such rule or portion of a rule or such guideline by the affirmative vote of at least a majority of the members present. . . . If any rule or portion of a rule or such guideline is so suspended, the committee shall as soon as possible place before the legislature, at any regular session and at any special session upon the consent of the governor, a bill to repeal the suspended rule or portion of a rule. . . ."

Opposition developed to the sick-pay provision of the rule and pursuant to an agreement with the committee, the department delayed the rule's effective date until September 1, 1972. In July, 1972, however, the department repealed the proposed rule and adopted what are termed "Sex Discrimination Guidelines:"

"By virtue of the authority vested in the Department of Industry, Labor, and Human [Relations] by Sections 111.31 to 111.37, Wisconsin Statutes, the Department of Industry, Labor, and Human Relations hereby adopts the following SEX DISCRIMINATION GUIDELINES. The Guidelines shall be applicable to all complaints presently pending or hereafter filed with the Department.

*"Sex Discrimination Guidelines*

"Employment Policies Relating to Pregnancy and Childbirth.

"(A) A written or unwritten employment policy or practice which excludes from employment applicants or employees because of pregnancy is in prima facie violation of the Wisconsin Fair Employment Practices Law.

"(B) Disabilities caused or contributed to by pregnancy, miscarriage, abortion, childbirth, and recovery therefrom are, for all job-related purposes, temporary disabilities and should be treated as such under any health or temporary disability insurance or sick leave plan available in connection with employment. Written and unwritten employment policies and practices involving matters such as the commencement and duration of leave, the availability of extensions, the accrual of seniority and other benefits and privileges, reinstatement, and payment under any health or temporary disability insurance or sick leave plan, formal or informal, shall be applied to disability due to pregnancy or childbirth on the same terms and conditions as they are applied to other temporary disabilities.

"(C) Where the termination of an employee who is temporarily disabled is caused by an employment policy under which insufficient or no leave is available, such a termination violates the Law if it has a disparate impact on employees of one sex and is not justified by business necessity.

"Dated at Madison, Wisconsin, the 10th day of July, 1972."

These guidelines were thus adopted *after* the complaint was filed in the instant case and, of course, *after* the

alleged discrimination occurred, but prior to the hearing on the complaint and the subsequent decisions by the hearing examiner and the commissioners.

Two questions must be considered here: (a) Are the guidelines invalid because not promulgated in accord with proper procedures? (b) If invalid, how does such invalidity affect the department's authority to decide contested cases involving pregnancy leave policies?

(a) *Validity of guidelines.*

The telephone company argues the guidelines are invalid for two reasons: (1) The joint committee expressed disapproval of IND 88.20, and the guidelines are very similar; (2) the guidelines were not filed as required by sec. 227.023, Stats. The department contends, however, that (1) while the joint committee did express disapproval, it never voted to suspend IND 88.20; and (2) the guidelines are not required to be published.

As to the first objection by the telephone company, the guidelines are unaffected by what members of the joint committee may have said in the hearing on IND 88.20. This rule is similar to the guidelines, but sec. 13.56, Stats., is explicit in providing for suspension of a rule only upon a majority vote of the committee. Here, the matter of suspension was never voted on.

We agree with the telephone company, however, that the guidelines are invalid because not filed in accord with sec. 227.023, Stats., which provides in part:

"(1) A certified copy of every rule adopted by an agency shall be filed by the agency in the office of the secretary of state and in the office of the revisor of statutes. No rule is valid until a certified copy thereof has been so filed."

The guidelines which are specifically stated to apply to sex discrimination complaints filed with the department fall within the ambit of sec. 227.01 (4):

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

"(4) *Every statement of general policy and every interpretation of a statute specifically adopted by an agency to govern its enforcement or administration of legislation shall be issued by it and filed as a rule.* The fact that a statement of policy or an interpretation of a statute is made in the decision of a case or in an agency decision upon or disposition of a particular matter as applied to a specific set of facts involved does not render the same a rule within sub. (3) or constitute specific adoption thereof by the agency so as to be required to be issued and filed as provided in this subsection." (Emphasis supplied.)

The department argues these guidelines fall under the exception contained in the last sentence of this subsection, as well as under sec. 227.014 (2) (c):

"(2) Rule-making authority hereby is expressly conferred as follows:
". . .
"(c) Each agency which is authorized by law to exercise discretion in deciding individual cases is authorized to formalize the general policies which may evolve from such decisions by adopting such policies as rules which the agency will follow until they are amended or repealed. Such rules are valid only to the extent that the agency has discretion to base its individual decisions on the policies expressed in the rules."

We disagree. The last sentence of sec. 227.01 (4) merely provides that an agency may announce a general principle in its decision in a contested case, as applied to the facts of the case, without having to file it as a rule. However, the guidelines here were promulgated outside the context of one particular contested case and do not qualify. Sec. 227.014 (2) (c) merely confers rule-making authority but does not say that rules evolving out of contested cases need not be filed, and sec. 227.023 expressly requires "every rule" to be filed.

We conclude, therefore, that because the guidelines were not filed in accord with sec. 227.023, Stats., they are invalid.

(b) *Effect of invalidity upon department's authority.*

The telephone company argues that if the guidelines are invalid, then the policy embodied in the guidelines is also unenforceable. The department argues however that even if the guidelines are invalid its authority is unimpaired to decide contested cases simply based upon the sex discrimination statute, sec. 111.32 (5) (g). This is the crux of the appeal now before us.

We conclude that here failure to file the guideline as a rule did not deprive the department of the authority to decide contested cases dealing with pregnancy leaves. A similar problem was considered in *Claflin v. Department of Natural Resources,*[14] where the department of natural resources' decision in a contested case was explicitly based upon a rule which this court held to have been adopted too late to be applicable to the case. However, the court said it was within the agency's power to reach the same result under the applicable statute, regardless of the rule, and it remanded the case to the agency for reconsideration in light of the statute rather than the rule.

So here, since there were three basic procedural errors in the handling of this case by the department we must affirm the trial court's determination overturning the department's award and we remand for further proceedings with the department confining itself to the statute.

Although it is inappropriate to reach the merits in light of the procedural defects discussed above and the lack of a full record, due to insufficient notice, it is crucial to determine whether the department would have authority to find sex discrimination in this case if the Wisconsin Telephone Company is found to have treated temporary disability due to pregnancy differently from

---

[14] (1973), 58 Wis. 2d 182, 206 N. W. 2d 392.

other temporary disabilities with respect to leave time, benefits, seniority, re-employment rights, etc., without what the department might consider an adequate business justification. Based on Wisconsin's sex discrimination statute, the department could find sex discrimination.

In the recent United States Supreme Court case of *Geduldig v. Aiello* [15] the court upheld the constitutionality of a pregnancy exclusion from coverage of the California disability insurance system, as against a challenge that the exclusion amounted to denial of equal protection under the fourteenth amendment to the United States Constitution. The court said that the disability plan was not discriminatory because:

". . . There is no risk from which men are protected and women are not. Likewise, there is no risk from which women are protected and men are not." [16]

Moreover, the court indicated that any inequality could be rationalized upon two grounds—because a state is not obligated to attack all aspects of a problem at once, and because inclusion of pregnancy as a covered disability would jeopardize the self-supporting nature of the plan or increase the contribution rate of participating low income employees. Three justices dissented, finding the pregnancy exclusion to be an unconstitutional sex discrimination.

It must first be noted that the insurance scheme upheld in *Geduldig* was created by the state legislature and the court found it justified by legitimate public policy factors. That same situation may not be present where a private employer's insurance plan is in question. More importantly, however, *Geduldig* was decided solely based upon the fourteenth amendment and we conclude that in interpreting Wisconsin's sex discrimination statute the department is not limited to finding discrimination only where a fourteenth amendment violation could also be

[15] (1974), 417 U. S. 484, 94 Sup. Ct. 2485, 41 L. Ed. 2d 256.
[16] *Id.* at pages 496, 497.

found.[17] Wisconsin's Fair Employment Act is specifically focused upon employment discrimination and is designed to prevent discrimination which "tends to deprive the victims of the earnings which are necessary to maintain a just and decent standard of living," [18] and causes "strife and unrest." [19] Sec. 111.31 (3), Stats., provides:

"(3) In the interpretation and application of this subchapter, and otherwise, it is declared to be the public policy of the state to encourage and foster to the fullest extent practicable the employment of all properly qualified persons regardless of their age, race, creed, color, handicap, sex, national origin or ancestry. *This subchapter shall be liberally construed for the accomplishment of this purpose.*" (Emphasis supplied.) [20]

The department is charged with administering the act and is given broad authority, where it finds discrimination, to "order such action by the respondent as will effectuate the purpose of this subchapter." [21] Thus the broad purpose of the Fair Employment Act is to eliminate practices that have a discriminatory impact as well as practices which on their face amount to invidious discrimination.

### *Back pay.*

One last issue concerns that part of the department order that requires the telephone company to pay Karen

[17] Two federal courts of appeal have recently reached similar conclusions, holding that under Title VII of the Civil Rights Act of 1964 pregnancy disability policies of private employers may be held illegal despite the fact that they could withstand a fourteenth amendment attack. *Wetzel v. Liberty Mut. Ins. Co.* (3d Cir. 1975), 511 Fed. 2d 199; *Communications Workers v. American Telephone & Telegraph Co. Long Lines Dept.* (2d Cir. 1975), 513 Fed. 2d 1024.

[18] Sec. 111.31 (1), Stats.
[19] Sec. 111.31 (2), Stats.
[20] Sec. 111.31 (3), Stats.
[21] Sec. 111.36 (3) (b), Stats.

Smith the sum she would have received had her period of disability been treated like other periods of disability. The department concedes that under this court's decision in *Murphy v. Industrial Comm.*[22] it was without authority to make such a back pay order. Although sec. 111.36 (3) (b), Stats., now permits the department to award back pay, the change in the law came too late to affect Karen Smith's rights before the department.[23]

*By the Court.*—Judgment affirmed insofar as it reversed the department's order and remanded case to the department; judgment reversed insofar as it directed the department to dismiss the complaint; cause remanded for remand to the department for further proceedings to be conducted in accordance with this opinion.

---

[22] (1968), 37 Wis. 2d 704, 712a, 155 N. W. 2d 545, 157 N. W. 2d 568.

[23] *See: Yanta v. Montgomery Ward & Co., Inc.* (1974), 66 Wis. 2d 53, 224 N. W. 2d 389.