A. F. CHASTAIN, Petitioner,

v.

TENNESSEE WATER QUALITY CONTROL BOARD, Respondent.

Supreme Court of Tennessee.

Sept. 6, 1977.

Robert L. McMurray, Bell, Painter, McMurray, Callaway, Brown & Mashburn, Cleveland, for petitioner.

William B. Hubbard, Asst. Atty. Gen., Nashville, for respondent.

## OPINION

BROCK, Justice.

The petitioner, A. F. Chastain, seeks review of an assessment of damages in the sum of $2,676.13 against him by the Commissioner of the Tennessee Department of Public Health for an alleged fish kill which occurred in the Little Wolftever Creek in Hamilton County. The assessment was made by the Commissioner pursuant to T.C.A. § 70–338, which directs the Commissioner to assess damages against one who kills fish in a public stream in violation of the Water Quality Control Act of 1971, T.C.A., § 70–324, et seq. Petitioner appealed the assessment to the Tennessee Water Quality Control Board which affirmed the assessment after a full hearing. Petitioner then appealed the award of the Board to the Chancery Court, Davidson County, which, upon full review of the record made before the Board, found no error and affirmed the award. Now he asks this Court to review the decree of the Chancery Court.

Petitioner contends that the record contains no substantial evidence of the amount of damages assessed by the Commissioner and affirmed by the Board and the Chancery Court. He makes the rather novel argument that the evidence adduced before the Board should be disregarded because it was the result of a "rule" of the Board which had not been previously approved by the Attorney General and filed with the Secretary of State, as required by T.C.A., § 4–502, which provides:

"Before any rule or regulation of any executive state officer, board, department, bureau, authority or commission promulgated after July 1, 1941, shall become effective (except such as relate to the organization of or internal management of such agency), such rule or regu-

lation shall be approved as to legality by the Attorney General, printed by said agency and filed with the Secretary of State." [1]

We hold that this argument of the petitioner is without merit and affirm the decree of the Chancery Court.

## I

The fish kill was investigated by field personnel of the Water Quality Control Division of the Department of Public Health and the Game and Fish Commission. The kill area covered a distance of 1.52 miles along the stream. The dead fish throughout the kill area were not counted. Instead, the investigators selected four areas of 100 yards each, which were considered to be typical, counted the dead fish in these areas and extrapolated these totals into an estimate of the total number of fish killed throughout the kill area. By this means the total number of fish killed was estimated to be 15,932, having a value of $2,099.51. Costs of investigation amounting to $576.62 were added making a total assessment of damages in the sum of $2,676.13.

At the hearing before the Board it was disclosed that this procedure for estimating the total number and value of fish killed had been recommended by the American Fisheries Society, Southern Division, and, by a resolution, had been approved by the Board; and, that the Board had instructed its investigators to estimate fish kills by using this recommended procedure. It also appears that the Board had evaluated this procedure and concluded that it produced trustworthy results which should and would be admissible in evidence at hearings before the Board.

Petitioner objected to testimony of a Game and Fish Commission biologist wherein he described this fish counting procedure and testified that he had used it in investigating this fish kill and in estimating the total number of fish killed at 15,932. Petitioner objected upon the ground that the estimate thus obtained was the result of a "rule" which was invalid because not approved by the Attorney General and filed with the Secretary of State as required by T.C.A., § 4–502.

This objection was overruled by the Chairman of the Board who explained that the Board had previously adopted a resolution endorsing the American Fisheries Society procedure and had directed the Division of Water Quality Control to use this method in investigating fish kills. A booklet describing the counting procedure, published by the American Fisheries Society, Southern Division, was introduced into evidence by the Commissioner.

The petitioner offered no evidence to contradict that of the Commissioner respecting the number of fish killed or their value; nor did he demonstrate, in our opinion, that the procedure used was arbitrary, unscientific or otherwise faulty or untrustworthy, despite extensive cross examination of the Commissioner's witnesses.

The record does not contain the mentioned resolution of the Board. However, Dr. Thackston, member of the Board, made this explanation:

". . . We had quite a few of these fish kills and the Board has adopted a Resolution endorsing this method which was derived by the American Fisheries Society, Southern Division, and by Resolution directed the personnel to use this method and these values of fish counting. So far as the Board is concerned we have already evaluated the method itself and since that time the only question before the Board is whether or not they—the personnel in the field in this instance actually did follow the method established for them. . . ."

## II

The problem is one of statutory construction. The statute itself does not define "rule or regulation," although anoth-

---

**1.** The recently enacted Uniform Administrative Procedures Act, T.C.A., §§ 4–507—4–527, has no application to this case. It did not become effective until after the relevant facts of this case had transpired.

er section of the same Act, T.C.A., § 4–501, affords some light by describing such "rules and regulations" as those "concerning the administration, enforcement and interpretation of any law of this state, except such as relate to the organization or internal management of such agency. . . ." Very little help is to be obtained from a consideration of the decisions of other courts construing similar provisions, e. g. *People v. Cull*, 10 N.Y.2d 123, 218 N.Y.S.2d 38, 178 N.E.2d 495 (1961); *People v. Widelitz*, 39 Misc.2d 51, 239 N.Y.S.2d 707 (1963); *California Association of Nursing Homes, Etc. v. Williams*, 4 Cal.App.3d 800, 85 Cal.Rptr. 735 (1970); *Wis. Tel. Co. v. Dept. of Ind. L. & H. Rel.*, 68 Wis.2d 345, 228 N.W.2d 649 (1975); *Mogis v. Lyman-Richey Sand & Gravel Corp.*, 189 F.2d 130 (8th Cir. 1951); 73 C.J.S. Pub. Adm. Bodies and Procedure § 102, p. 420. The obvious purpose of the statute was to bring together in one place the rules and regulations of all state administrative agencies to facilitate their convenient inspection by interested citizens.

It is our opinion that, as here used, "rule or regulation" refers to a statement, of general applicability, of a state administrative officer or agency that (1) is legislative in nature and implements or prescribes law or policy, within the scope of the authority of such officer or agency, or (2) prescribes the rules of procedure or practice governing proceedings before such officer or agency; excepting, however, those rules and regulations relating to the organization or internal management of the agency.

As thus construed, T.C.A., § 4–501–2, does not encompass the resolution of the Tennessee Water Quality Control Board (1) instructing its field personnel to employ the procedure recommended by the American Fisheries Society, Southern Division, for estimating the number of fish killed in a stream, and their value, and (2) determining that such procedure is sufficiently scientific, fair and reasonable to render admissible into evidence the estimates thus obtained.

Clearly, the instruction to the Board's employees is not a "rule or regulation." It does not implement or prescribe law or policy, it does not prescribe a rule of procedure or practice to be followed in proceedings before the board, and it is not intended to have general applicability. Moreover, it relates to the organization or internal management of the Board. The same is true of the prior determination of the Board that the procedure for estimating fish kills recommended by the American Fisheries Society produces results sufficiently reliable to be admissible as evidence. In so doing the Board merely reached a legal conclusion respecting the admissibility of opinion evidence; and the conclusion was tentative, at best, since it was subject to change in the event petitioner could demonstrate that the procedure was unreliable or unfair.

### III

Finally, if the resolution of the Board were considered to be a "rule or regulation" which was invalid because of noncompliance with T.C.A., §§ 4–501—4–506, the appellant would be in no better position because the evidence adduced at the hearing would still be in the record to support the findings of the Board. The fact that such evidence had been assembled and admitted at the hearing as the result of an invalid rule or regulation would not affect its value, competence or admissibility. Cf. *Claflin v. Dept. of Natural Resources*, 58 Wis.2d 182, 206 N.W.2d 392 (1973); *Wisconsin Tel. Co. v. Dept. of Ind., Labor & Human Relations*, 68 Wis.2d 345, 228 N.W.2d 649, 660 (1975).

The decree of the Chancery Court is affirmed. Costs in this Court are taxed to petitioner, A. F. Chastain.

COOPER, C. J., and FONES, HENRY, and HARBISON, JJ., concur.