Ray-O-Vac, Division of E. S. B., Inc., Respondent, v. Department of Industry, Labor & Human Relations, Appellant: Nordness and another, Respondents.*

*No. 600 (1974). Argued November 24, 1975.—Decided December 19, 1975.*
(Also reported in 236 N. W. 2d 209.)

---

* Motion for rehearing denied, without costs, on February 27, 1976.

920

For the appellant the cause was argued by *Gordon Samuelsen,* assistant attorney general, with whom on the briefs was *Bronson C. La Follette,* attorney general.

For the respondent Ray-O-Vac there was a brief by *James C. Herrick, Timothy D. Fenner,* and *Axley, Brynelson, Herrick & Gehl,* all of Madison, and oral argument by *Mr. Herrick* and *Mr. Fenner.*

A brief amicus curiae was filed by *Priscilla Ruth Mac Dougall* for the Wisconsin Education Association Council.

For the respondent Ray-O-Vac there was a brief by *James C. Herrick* and *Axley, Brynelson, Herrick & Gehl,* of Madison.

A brief amicus curiae was filed by *Walter S. Davis, John P. Savage* and *Davis, Kuelthau, Vergeront, Stover & Leichtfuss, S. C.* of Milwaukee, for Employers Association, Inc.

A brief amicus curiae was filed by *Herbert P. Wiedemann, Stanley S. Jaspan, Gary J. Okey* and *Foley & Lardner* of Milwaukee, for J. C. Penney Company, Inc.

BEILFUSS, J. The respondents Kristine Nordness and Sheryll Dvorak (they have not appeared in this appeal), employees of Ray-O-Vac, filed complaints with the ILHR Department alleging they had been discriminated against on the basis of sex because of the divergent limitations of disability payments for pregnancy and childbirth as contrasted to other disabilities.

Kristine Nordness commenced her employment with Ray-O-Vac on July 21, 1970. On or about August 30, 1972, she gave to her employer a note from her doctor which indicated that she was pregnant, that her expected delivery date was January 31, 1973, and that she could continue working according to the rules of the company with the suggestion that she not do heavy work. Nordness submitted a second note from her doctor on November 1, 1972, recommending that she be given a leave of absence beginning on November 13, 1972. Leave was granted on November 10th and she began receiving six weeks of disability benefits on that date. A child was

born to Nordness by Caesarean delivery on January 24, 1973, and, upon her doctor's advice, she did not return to work until November 9, 1973. Between May 9, 1973, and November 8, 1973, she was unable to return to work due to a condition of chronic dermatitis.

Sheryll Dvorak began her employment at Ray-O-Vac on September 29, 1971. She was laid off on January 18, 1972. She became pregnant in March, 1972, while she was on a layoff status. Dvorak returned from layoff on May 1, 1972. She gave her employer a note from her doctor on May 24th certifying her pregnancy and placing her expected delivery date at November 8, 1972. A second note, submitted on October 11, 1972, changed the expected delivery date to December 15th and recommended that she quit work. She was granted a maternity leave on October 13, 1972, but was paid no disability benefits. The child was born on December 22d and Dvorak returned to work on March 5, 1973.

William Rettie, director of employee relations at Ray-O-Vac, stated at the hearing that Sheryll Dvorak was paid no disability benefits during her maternity leave because she was on layoff at the time of conception and was therefore not covered by the company's group insurance plan. Ray-O-Vac's "Group Insurance Plan" booklet was submitted as an exhibit at the hearing. Under the heading, "Weekly Disability Benefits For Employees," the booklet provides:

"The plan pays you a weekly benefit for disability absences during which you are prevented from working as a result of non-occupational accidental bodily injury or disease. Your benefit will commence on the first day of disability due to injury and on the eighth day of disability due to disease and is payable for a maximum of twenty-six weeks during any one period of disability.
" . . .
"The disability absence must commence while insurance is in force."

Under the heading, "Maternity Benefits," the booklet provides:

"If a disability absence is due to pregnancy, or resulting childbirth or miscarriage, the maximum period of payment is six weeks. Benefits are payable only if the pregnancy and the resulting disability absence commence while your insurance is in force."

When employment terminates due to layoff, insurance remains in force until the end of the month of termination. Terminated employees may convert the group coverage to an individual policy upon application made within thirty days following termination. Sheryll Dvorak did not exercise this conversion privilege.

Dvorak testified that her January, 1972, layoff was against her wishes. She stated that she was given the alternative of taking a man's job at the plant but was under the impression that she would be fired if that job did not work out. She further stated that she was told by Richard Engel, the personnel manager, that she would be better off if she took the layoff. Engel testified that layoffs were connected with general cutbacks in production and that the system for layoffs was based on seniority, with the most senior employees having the right to work as long as there was work available. The company first determines which jobs will be eliminated and then lays off a corresponding number of employees with the least seniority. Senior employees whose jobs are eliminated are given the opportunity to choose from jobs available in accordance with their seniority. Engel stated that Dvorak was shown a list of available jobs and was informed that if she chose one she would be expected to perform it satisfactorily or face discharge. The union was aware of and in accord with the layoff policy.

William Rettie further testified that increasing the maximum period of benefits for disability absences due to pregnancies from six weeks to twenty-six weeks would be more costly.

Adopting the recommended findings of fact and conclusions of law of the examiner, ILHR Department concluded Ray-O-Vac's plan for temporary disability bene-

fits which treated temporary disabilities due to pregnancy and childbirth differently than other temporary disabilities was discrimination based upon sex and unlawful under the Wisconsin Fair Employment Law (sec. 111.31 through sec. 111.37, Stats.). It further found there was not sufficient proof of business necessity permitted under sec. 111.32 (5) (g) to treat temporary disability due to pregnancy and childbirth differently than other temporary disabilities.

The trial court held that there was no sex discrimination in the plan, that women were treated equally with respect to disability from injury or disease, and that providing a benefit for disability arising from pregnancy benefits rather than prejudices women employees. The trial court also stated that the department was without authority to "order back pay." The findings, conclusions and order of the department were set aside. ILHR Department appeals "from only those portions of the final order or judgment . . . setting aside and reversing the order of the Department . . . which provided that Ray-O-Vac treat temporary disability due to pregnancy and childbirth the same as it treats other temporary disabilities in every respect; that Ray-O-Vac notify the department of its compliance within 90 days of the date of the order, but appeal is not taken from that portion of the order setting aside the department's decision that Ray-O-Vac pay sums to Kristine Nordness and Sheryll Dvorak 'as disability benefits."

Ray-O-Vac contends that ILHR Department improperly based its decision in this case upon certain "Sex Discrimination Guidelines" which are invalid because not adopted in accordance with ch. 227, Stats. Specifically, Ray-O-Vac argues that the guidelines, as a "statement of general policy" under sec. 227.01 (4), Stats.,[1] con-

[1] "227.01 **Definitions**. . . . (4) Every statement of general policy and every interpretation of a statute specifically adopted by an agency to govern its enforcement or administration of legislation shall be issued by it and filed as a rule. The fact

stituted an administrative rule which was required to be filed in accordance with sec. 227.023 (1).[2] The department's alleged reliance upon an invalid rule as the basis for the decision in this case is argued to have deprived Ray-O-Vac of due process of law.

The recent case of *Wisconsin Telephone Co. v. ILHR Department* (1975), 68 Wis. 2d 345, 228 N. W. 2d 649, concerned the validity of a department order which was based upon the same guidelines which are alleged by Ray-O-Vac to constitute the basis for the order in this case. This court there determined that the guidelines did, in fact, constitute rules which must be filed in accordance with ch. 227. However, failure to file the guidelines as a rule was held not to have deprived the department of the authority to decide the case, since the same result could be reached under the applicable statute regardless of the rule.[3] The court remanded the case to the department for a determination based on the statute only.

In this case it appears that the order was based not upon the invalid guidelines, but upon the provisions of sec. 111.32 (5) (g) 1, Stats.,[4] which makes it unlawful

that a statement of policy or an interpretation of a statute is made in the decision of a case or in an agency decision upon or disposition of a particular matter as applied to a specific set of facts involved does not render the same a rule within sub. (3) or constitute specific adoption thereof by the agency so as to be required to be issued and filed as provided in this subsection."

[2] "227.023 **Filing of rules.** (1) A certified copy of every rule adopted by an agency shall be filed by the agency in the office of the secretary of state and in the office of the revisor of statutes. No rule is valid until a certified copy thereof has been so filed."

[3] *See: Claflin v. Department of Natural Resources* (1973), 58 Wis. 2d 182, 206 N. W. 2d 392.

[4] 111.32 (5) "(g) It is discrimination because of sex:

"1. For an employer, labor organization, licensing agency or person to refuse to hire, employ, admit or license, or to bar or to terminate from employment or licensing such individual, or to discriminate against such individual in promotion, compensation or in terms, conditions or privileges of employment or licensing."

for an employer to discriminate against any individual because of sex in promotion, compensation or in terms, conditions or privileges of employment. In response to Ray-O-Vac's objection to the validity of the proceedings and the department's jurisdiction to act in the matter, the hearing examiner outlined the developments giving rise to the controversy concerning the validity of the questioned sex discrimination guidelines. Because of that controversy, the examiner stated:

"The Department takes the position, and it is important for purposes of this hearing, that the Complaint in this matter alleged a violation of the Wisconsin Fair Employment Law, Sections 111.31 to 111.37. The Fair Employment Law prohibits sex discrimination in employment. The Department takes the position that in deciding the Complaint, it is applying the Fair Employment Law, and in making a determination of whether sex discrimination had occurred, it can only look to the Fair Employment Law."

Therefore, the question of the invalidity of the department rule is immaterial because the determinations of the ILHR Department were based on the statute and not the rule.

In adopting the hearing examiner's recommended conclusions of law, ILHR Department found that Ray-O-Vac's group insurance plan which provides different maximum periods of benefits and different conditions of eligibility for benefits for temporary disability due to pregnancy and childbirth than are provided for other temporary disabilities discriminates against women employees on the basis of their sex in violation of secs. 111.32 (5) (g) 1 and 111.325, Stats. Ray-O-Vac argues, and the trial court held, that the plan is not discriminatory.

Reference must again be made to *Wisconsin Telephone Co. v. ILHR Department, supra.* In that case the department was asked to consider whether an employer discriminated on the basis of sex by applying different terms and conditions of employment to temporary dis-

abilities due to pregnancy and childbirth than were applied to other temporary disabilities. More precisely, the complainant alleged in that case, and the department found, that the employer had a fixed leave policy (a mandatory period of six months) for pregnancies as opposed to a flexible leave policy for other temporary disabilities. In addition, the complainant charged that certain disability benefits, insurance coverage and seniority credit provided to employees with temporary disabilities were not available to employees whose disability resulted from pregnancy or childbirth. This court did not reach the merits of the controversy, but concluded, in remanding the case for further consideration, that the department could find sex discrimination under Wisconsin's Fair Employment Law if it found that the employer treated disability due to pregnancy differently from other temporary disabilities with respect to leave time, benefits, seniority and re-employment rights without "what the department might consider an adequate business justification."

The primary dispute in this case, too, is whether different treatment for a disability due to pregnancy and childbirth than for a temporary disability due to other causes might be considered "discrimination because of sex" in violation of the fair employment law. Ray-O-Vac's primary contention is that this difference in treatment does not constitute, per se, sex discrimination. Relying upon *Geduldig v. Aiello* (1974), 417 U. S. 484, 94 Sup. Ct. 2485, 41 L. Ed. 2d 256, Ray-O-Vac argues that while pregnancy does result in a temporary disability, the plan does not discriminate because all pregnant employees receive the same benefits. Male and female employees are treated equally, Ray-O-Vac points out, for disabilities due to nonoccupational accidental injury or disease. In *Geduldig, supra,* the United States Supreme Court stated in a footnote at pages 496, 497:

"The dissenting opinion to the contrary, this case is thus a far cry from cases like *Reed v. Reed,* 404 U. S. 71

(1971), and *Frontiero v. Richardson,* 411 U. S. 677 (1973), involving discrimination based upon gender as such. The California insurance program does not exclude anyone from benefit eligibility because of gender but merely removes one physical condition—pregnancy —from the list of compensable disabilities. While it is true that only women can become pregnant, it does not follow that every legislative classification concerning pregnancy is a sex-based classification like those considered in *Reed, supra,* and *Frontiero, supra.* Normal pregnancy is an objectively identifiable physical condition with unique characteristics. Absent a showing that distinctions involving pregnancy are mere pretexts designed to effect an invidious discrimination against the members of one sex or the other, lawmakers are constitutionally free to include or exclude pregnancy from the coverage of legislation such as this on any reasonable basis, just as with respect to any other physical condition.

"The lack of identity between the excluded disability and gender as such under this insurance program becomes clear upon the most cursory analysis. The program divides potential recipients into two groups—pregnant women and nonpregnant persons. While the first group is exclusively female, the second includes members of both sexes. The fiscal and actuarial benefits of the program thus accrue to members of both sexes."

Ray-O-Vac's argument, in brief, is that there is no disparate treatment in the first instance since pregnancy is a disability suffered only by women and there is no risk from which men are protected under the program and women are not.

This court in the *Wisconsin Telephone Co. Case* distinguished *Geduldig* primarily on the ground that the challenge there was based upon the equal protection clause of the fourteenth amendment. The court concluded that, in interpreting Wisconsin's sex discrimination statute, the department "is not limited to finding discrimination only where a fourteenth amendment violation could also be found." This position finds support in recent cases decided both under Title VII of the Civil Rights Act of 1964 and under various state laws which also prohibit

sex discrimination in employment.[5] Simply put, the position is that a classification which might not be prohibited by the constitution may be proscribed by legislative enactment. While Wisconsin's statute prohibiting sex discrimination in employment may be a function of the basic equal protection guarantee, its command is more direct and positive. Its enforcement is not limited by the "rational basis" or "reasonableness" test employed in fourteenth amendment cases.[6]

Whether arising under the fourteenth amendment or under the statute, however, the threshold question remains the same: is there "discrimination?" That is, is there disparate treatment for persons similarly circumstanced?[7] Ray-O-Vac contends that because only women can become pregnant, men and women are not "similarly circumstanced." Since all pregnant women are treated alike under the plan, the argument continues, it is not discriminatory. We believe this argument misses the point. The relevant question here is whether, in light of its purpose, the effect of the benefits program is to provide disparate treatment for men and women employees.[8] The undeniable thrust of Ray-O-Vac's "Group Insurance Plan" is to provide financial assistance to its employees who are temporarily disabled. In this context, the matter to be determined is whether, as to eligibility

[5] *Zichy v. City of Philadelphia* (D. C. Pa. 1975), 392 Fed. Supp. 338; *Sale v. Waverly-Shell Rock Board of Education* (D. C. Iowa 1975), 390 Fed. Supp. 784; *Communications Workers v. American T. & T. Co.* (2d Cir. 1975), 513 Fed. 2d 1024; *Wetzel v. Liberty Mut. Ins. Co.* (3d Cir. 1975), 511 Fed. 2d 199, certiorari granted (1975); *Satty v. Nashville Gas Co.* (D. C. Tenn. 1974), 384 Fed. Supp. 765.

[6] *See, e.g.: Hortonville Education Asso. v. Joint School Dist. No. 1* (1975), 66 Wis. 2d 469, 225 N. W. 2d 658.

[7] *See: State Bank of Drummond v. Nuesse* (1961), 13 Wis. 2d 74, 108 N. W. 2d 283.

[8] *See: Cedar Rapids Community School Dist. v. Parr* (Iowa 1975), 227 N. W. 2d 486.

for and amount of benefits, men and women employees are treated alike under the plan.

We pointed out in *Wisconsin Telephone Co. v. ILHR Department, supra,* that Wisconsin's Fair Employment Act "is specifically focused upon employment discrimination and is designed to prevent discrimination which 'tends to deprive the victims of the earnings which are necessary to maintain a just and decent standard of living,' and causes 'strife and unrest.'" The provisions of the act are to be liberally construed to accomplish this purpose. Sec. 111.31 (3), Stats. A woman employee who is disabled as the result of a pregnancy has as great a need for the benefits which are provided by the plan as an employee, man or woman, who is disabled as the result of a nonoccupational accidental injury or disease.

The parties all agree that a private employer is not compelled by law to provide benefits in the case of temporary disability, and so do we. However, if he chooses to do so, it must be under a plan which does not discriminate on any basis prohibited by the fair employment law. Ray-O-Vac contends that the different treatment afforded by its plan is based, not upon the sex of the employee, but upon the difference in type of disability; and argues that pregnancy is neither "accidental" nor an "injury or disease," but is, instead, a voluntary physiological condition. This argument has been raised in other cases without success.[9] In *Gilbert v. General Electric Co.* (D. C. Va. 1974), 375 Fed. Supp. 367, 381, 382, the district court convincingly responded to a similar argument in the following manner:

"... Women are required to undergo the economic hardship of the disability which arises from their participation in the procreative experience. The disability is

___

[9] *See: Cedar Rapids Community School Dist. v. Parr, supra; Buckley v. Coyle Public School System* (10th Cir. 1973), 476 Fed. 2d 92, 94, 95; *Zichy v. City of Philadelphia, supra.*

undisputed and inextricably sex-linked. To isolate such a disability for less favorable treatment in a scheme purportedly designed to relieve the economic burden of physical incapacity is discrimination by sex. . . . "The question of voluntariness is not really the issue. The fact is that the defendant's policy penalizes plaintiffs and members of their class for being women and suffering disabilities to which they alone are inherently susceptible, and this is discriminatory. [Case cited.]"

Ray-O-Vac has undertaken to provide benefits for certain "disability absences." It has chosen to include pregnancy-related disabilities within the plan but has set a different maximum for those absences. Pregnancy is undeniably a sex-related characteristic and, whatever Ray-O-Vac's good motives, the effect of the plan is to discriminate against women employees, all of whom presumably have the capacity to become pregnant. The command of the statute is clear: employers may not discriminate on the basis of sex without an "adequate business justification." *See: Wisconsin Telephone Co. v. ILHR Department, supra.* Ray-O-Vac's argument that the disparate treatment is based, not upon sex, but upon legitimate differences in types of disabilities must be directed to the issue of business necessity or justification, and not to the issue of whether the plan is discriminatory in the first instance.

Discrimination based on sex is not prohibited under sec. 111.32 (5) (d), Stats.,[10] where the nature of the work or working conditions provide valid reasons for hiring only men or only women, or where a differential in pay between employees is based on good faith on any factor other than sex. The department concluded in this

[10] "The prohibition against discrimination because of sex does not apply to the exclusive employment of one sex in positions where the nature of the work or working conditions provide valid reasons for hiring only men or women, or to a differential in pay between employes which is based in good faith on any factor other than sex."

case that there was "no business necessity of record to justify treating temporary disability due to pregnancy and childbirth differently than other temporary disabilities are treated for purposes of weekly disability benefits."

The department has, in effect, concluded the burden to prove business necessity was upon Ray-O-Vac and that it has not produced sufficient evidence to warrant a favorable finding.

Ray-O-Vac contends that the increased expense which would be required to equalize the program (extend the maximum weeks in which benefits are payable for pregnancy-related disability to twenty-six) is sufficient proof and disputes the department's finding of fact which provides:

"25. That providing 26-week maximum benefits for temporary disabilities due to pregnancy and childbirth would be more costly than providing 6-week maximum benefits; but that no evidence was presented by Respondents regarding how much more costly such expanded benefits would be."

Relying upon federal cases applying the provisions of Title VII, the department contends that increased cost does not constitute an "adequate business justification." In any case, the department argues, Ray-O-Vac did not present sufficient evidence at the hearing to support a determination that the increased expense which would be incurred in equalizing the maximum benefits available for all disability absences would be substantial.

The increased cost argument has not been favorably received in Title VII cases. However, it must be noted that under the Equal Employment Opportunity Commission guidelines, increased cost is no defense to a sex discrimination charge.[11] No similar rule has been

---

[11] *See:* 29 C. F. R. (1975), 1604.9 (e); *Rosenfeld v. Southern Pacific Co.* (9th Cir. 1971), 444 Fed. 2d 1219; *Wetzel v. Liberty*

promulgated by the department under this state's Fair Employment Act or by statute.

We conclude that greatly increased costs should be considered a factor excusing a discriminatory practice. We agree with the department that Ray-O-Vac failed to present sufficient evidence indicating a substantial increase in cost for expanded benefits. The only testimony on this point was that of William Rettie, who read from a letter to the department which he had written in answer to the initial complaint:

" 'The premium paid by the Company for the weekly disability benefit is based upon a formula, which takes into account the distribution and the employees' population for this location of male and female employees and the ages of the female employees of the Madison plant, the number of female employees under 40 years of age, which for premium purposes is considered a group for whom the maternity disability benefit is provided represents at the present time approximately ten percent of the total number of the employees at this location.

" 'Based on current premiums, the cost of providing the six weeks maternity disability benefit represents approximately 12 percent of the cost of providing the weekly disability benefit for all employees in the Madison plant; and the design of the group insurance coverage, the levels of weekly disability benefit for absences due to non-occupational injury and disease and for absences due to pregnancy are based on the employee profile and the claim experience in order to provide weekly maternity disability benefits, the cost of which will have approximately the same relation to the total cost of all weekly disability benefits as the number of female employees in the child bearing age group bears to the total employment for that location.' "

Rettie also stated that if Ray-O-Vac were to provide twenty-six weeks of pregnancy leave benefits without paying an additional premium, the number of weekly

*Mutual Ins. Co.* (3d Cir. 1975), 511 Fed. 2d 199, certiorari granted (1975).

benefits for disability due to injury or disease would have to be reduced. There is no statistical proof that the revamped program would require a substantial increase in expense.

The department also directed that Ray-O-Vac pay Sheryll Dvorak disability benefits. Ray-O-Vac refused to pay any benefits to Dvorak because conception occurred and pregnancy commenced during a period of time when she was on "layoff" status. However, Sheryll Dvorak's disability did not occur until several months after she was recalled to work. At the time disability occurred she was working and was covered by the disability plan. Under terms of the plan, it appears when the disability is due to nonoccupational injury or disease only the disability absence must commence while the insurance is in force. This part of the insurance plan is designed to compensate the employee for loss of wage because of absence due to disability. It thus appears that the plan as interpreted by Ray-O-Vac sets up a different standard of eligibility for benefits for disabilities due to pregnancy and childbirth than is required for disabilities due to other causes.

In this case we deal with an employee who had been employed, was covered by the disability provisions, temporarily laid off, and then called back to work before the disability occurred and conclude she was entitled to benefits. We express no opinion as to what the rule would have been had the disability occurred during a layoff period or where pregnancy commenced before original employment.

*By the Court.*—Judgment reversed and remanded with directions to reinstate the order of the Department of Industry, Labor & Human Relations except as to the provisions of the order that direct payment and, as to those provisions, the judgment is affirmed.