KIMBERLY-CLARK CORPORATION, Petitioner-Appellant,

v.

LABOR & INDUSTRY REVIEW COMMISSION, Respondent.

Court of Appeals

*No. 79–080. Submitted on briefs June 21, 1979.—*
*Decided March 6, 1980.*
(Also reported in 291 N.W.2d 584.)

For the petitioner-appellant the cause was submitted on the briefs of *George K. Whyte, Jr.,* and *Patrick W. Schmidt,* and *Quarles & Brady* of Milwaukee, and *Edward E. Wall* and Kimberly-Clark Corporation of Neenah, of counsel.

For the respondent the cause was submitted on the brief of *Bronson C. La Follette,* attorney general, and *Beatrice Lampert,* assistant attorney general.

Before Gartzke, P.J., Bablitch, J. and Dykman, J.

BABLITCH, J. This is a sex discrimination case brought by Virginia LeMere (complainant) pursuant to the Wisconsin Fair Employment Act (WFEA), secs. 111.31–111.37, Stats. Kimberly-Clark Corporation (company) appeals from a judgment of the circuit court for Dane County affirming the order of the Labor and Industry Review Commission (commission). The order required the company to cease and desist from a policy of excluding pregnancy from its short-term group disability plan, and to pay the complainant the benefits she would have received if covered by the plan during that portion of a two-month maternity leave during which the commission found her to be disabled.

The complainant was employed by the company as a clerical worker at all times material to this controversy. In January 1975 she advised the company that she was

pregnant. In February 1975 the company initiated a short-term disability plan for its personnel. The plan provides maximum benefits of full salary during absences from work due to disability. It excludes coverage for disability resulting from self-inflicted injury, military service, participation in war or acts of war, and pregnancy.

Following her receipt of a copy of the plan and a discussion of the pregnancy exclusion with her supervisor, the complainant filed a complaint with the Equal Rights Division of the Department of Industry, Labor & Human Relations alleging that the plan discriminated against her on the basis of sex in violation of WFEA.[1] An initial determination was issued by the agency on July 10, 1975, finding probable cause to believe that such discrimination had occurred. The matter was certified to hearing after conciliation efforts failed. No hearing was held until after the birth of the complainant's child.

Prior to the probable cause finding, and in accordance with company policy, the complainant submitted a request on May 29, 1975 for a maternity leave of absence to commence August 2, 1975 and to end on or about October 6, 1975. Along with her request she submitted a letter from her doctor estimating her date of delivery as August 12, 1975, and stating that the complainant "may work as long as she is comfortable."

The maternity leave was granted. The complainant left her employment on August 2, 1975 and returned to work on October 6, 1975. Her baby·was born on August

---

[1] Section 111.32(5)(g), Stats., provides in part that it is discrimination because of sex:

1m. For an employer, labor organization, licensing agency or person, on the basis of sex where sex is not a bona fide occupational qualification, to discriminate against any individual in promotion, compensation paid for equal or substantially similar work, or in terms, conditions or privileges of employment or licensing . . . .

12, 1975. The complainant was hospitalized from August 12 through August 15, 1975. At the time she commenced her leave the complainant was entitled to three weeks of paid vacation time which she applied to the first three weeks of her absence.

After a hearing, the examiner recommended findings of fact, conclusions of law, and an order which were adopted in their entirety by the commission. Among the findings of fact were the following:

5. Complainant was disabled from working due to maternity from August 2, 1975, until August 22, 1975.

. . . .

7. Complainant did not receive any payments under the short term disability plan for her maternity leave of absence.

8. Complainant opted to take her three weeks of vacation pay during her maternity leave because she was told she could not receive weekly payments under the short term disability plan.

The commission concluded that the company's failure to make disability payments during the period of actual disability as found by the examiner constituted discrimination on the basis of sex under WFEA. Its order was affirmed in all respects by the circuit court following a ch. 227, Stats., review.

The company raises the following issues on this appeal:

1. Whether the evidence is sufficient to support the commission's finding that the complainant was disabled due to maternity between August 2 and August 22, 1975.

2. Whether the federal Employee Retirement Income Security Act of 1974 (ERISA) preempts the WFEA, thus rendering ERISA the "sole regulator" of employee benefit plans.

3. Whether a group employment disability insurance plan covering pregnancy-related disabilities violates the provisions of the federal Equal Pay Act of 1963.

The company does not contend that the complete exclusion of pregnancy-related disabilities under its disability plan does *not* constitute sex discrimination under WFEA, if actual disability is established. This potential issue has never been directly considered in Wisconsin. In *Ray-O-Vac v. ILHR Department*, 70 Wis.2d 919, 236 N.W.2d 209 (1975), the Wisconsin Supreme Court held that a plan which provided lesser benefits for pregnancy disabilities than for all other forms of disability violated WFEA. The court said that since the employer had "chosen to include pregnancy-related disabilities within the plan," it was unlawful to treat those disabilities differently from other disabilities without an adequate business justification. 70 Wis.2d at 932, 236 N.W.2d at 215. *Accord, Wisconsin Telephone Co. v. ILHR Dept.*, 68 Wis. 2d 345, 228 N.W.2d 649 (1975).

In *General Electric Co. v. Gilbert*, 429 U.S. 125 (1976), the United States Supreme Court held that a plan which excluded pregnancy-related disabilities altogether from its employee disability plan did not, *per se*, violate Title VII of the Civil Rights Act of 1964, which contains language substantially identical to WFEA. This court was required to consider the very different approaches employed by the two courts in construing the similar acts. In *Goodyear Tire & Rubber Co. v. DILHR*, 87 Wis.2d 56, 273 N.W.2d 786 (Ct. App. 1978), this court analyzed the fundamentally different approaches used by the Wisconsin and United States Supreme Courts in construing the similar acts. *Goodyear* involved a pay plan which, like that in *Ray-O-Vac*, covered pregnancy disabilities but

provided lesser benefits than for other disabilities. We said:

The distinction between providing lesser benefits and excluding benefits for pregnancy related disability is of no moment. . . . Pregnancy exclusions as well as lesser benefits for pregnancy disabilities are, in our opinion, equally voided under *Wisconsin Telephone* and *Ray-O-Vac* because of their effect. 87 Wis.2d at 62, 273 N.W.2d at 790.

Consequently, under this court's view of WFEA as construed by the Wisconsin Supreme Court, the disability pay plan involved in this case unlawfully discriminates because of sex within the meaning of sec. 111.32(5)(g), Stats., by withholding benefits from pregnancy-disabled employees. The company does not contend otherwise on this appeal.

### SUFFICIENCY OF THE EVIDENCE TO ESTABLISH DISABILITY

Section 111.37, Stats., provides that the commission's findings of fact in employment discrimination cases are subject to judicial review under ch. 227, Stats. Section 227.20(6) provides:

If the agency's action depends on any fact found by the agency in a contested case proceeding, the court shall not substitute its judgment for that of the agency as to the weight of the evidence on any disputed finding of fact. The court shall, however, set aside agency action or remand the case to the agency if it finds that the agency's action depends on any finding of fact that is not supported by substantial evidence in the record.

In *Copland v. Department of Taxation*, 16 Wis.2d 543, 554, 114 N.W.2d 858, 863 (1962), quoted with approval in *Holtz & Krause, Inc. v. DNR*, 85 Wis.2d 198, 204, 270 N.W.2d 409, 413 (1978), the supreme court defined the

scope of the "substantial evidence" test as follows:

"[It] should be construed to confer finality upon an administrative decision on the facts when, upon an examination of the entire record, the evidence, including the inferences therefrom, is found to be such that a reasonable man, acting reasonably, *might* have reached the decision; but, on the other hand, if a reasonable man, acting reasonably, *could not* have reached the decision from the evidence and its inferences then the decision is not supported by substantial evidence and it should be set aside." [Quoting E. Blythe Stason, *"Substantial Evidence" in Administrative Law*, 89 Univ. of Penn. L. Rev. 1026, 1038 (1941); emphasis in original.]

It has also been held that in applying that test on review the court "does not pass on credibility or assay the evidence to determine which view preponderates or what evidence supporting a theory is of the greater weight." *Stacy v. Ashland County Dept. of Public Welfare*, 39 Wis.2d 595, 603, 159 N.W.2d 630, 634 (1968).

The company contends that there is *no* evidence to support the commission's finding that the complainant was disabled for any period of time either before or after the birth of her son. Since she testified that she was able to perform housework during those periods, it reasons, the record establishes that she was not disabled from performing the merely clerical duties of her employment. It contends that the finding of disability is further undermined by the fact that the complainant's actual leave of absence coincided exactly with the preplanned leave requested several weeks in advance of her departure. We find the company's arguments unpersuasive.

The complainant testified that during the ten days between the commencement of her leave and the date of delivery she stayed at home. She saw her doctor regularly and experienced no complications with her pregnancy. She stated that her doctor had told her she could

work "as long as I felt comfortable and I didn't get excessively tired," and that toward the end of July the weather "was quite hot and it was very uncomfortable." The sole reference in her testimony to housework during the period before delivery is as follows:

Q. Did you do any of your housework?
A. Yes.
Q. Were there any restrictions on what you could do?
A. Lifting too much, walking, standing, that type of thing.

In our view a reasonable mind might well accept this evidence as adequate to establish that the complainant was disabled from regular full-time employment during the ten days prior to delivery. The fact that she could do "some" housework at her home, presumably at her own pace and with ample opportunities for rest, does not establish that she was fit to report to work each day and perform the duties of full-time employment. Her doctor's written statement, which the company requires to be submitted whenever a leave of more than two weeks is requested, provided that she could work as long as she was "comfortable." It is apparent that at the time she requested and the company granted her maternity leave of absence, both parties anticipated that she would become too uncomfortable to work from and after August 2, 1975. That prediction proved to be correct according to the complainant's unrefuted testimony. The commission's finding that her discomfort constituted disability between August 2 and August 12, 1975 is supported by the evidence.

It would not be reasonable to conclude that the complainant was other than disabled during the three days of her hospitalization from August 12 through August 15, and the company does not seriously press the point on appeal.

With respect to the seven days following her release from the hopsital the complainant testified as follows:

Q. Did [your doctor] indicate how long you should stay off work when you had your baby?
A. Not at the time, no.
Q. From August 15 until the time you returned to work, what did you do?
A. Cared for my son.
Q. What, if any, housework did you do?
A. Normal. Just normal housekeeping.
Q. What did that include?
A. Dusting, vacuuming, dishes, scrubbing floors.
Q. Were there any restrictions on what you could do?
A. No.
Q. Were you able to assume the normal household duties immediately upon coming home from the hospital?
A. No, but within a week I was.

The fair interpretion of this testimony is that the complainant was unable to perform normal household duties during the week following her return from the hospital. We find this hardly surprising. Some women may be able to resume normal activities immediately after the birth of a child. The complainant testified that she was not. She also testified that her doctor would not see her, and that she did not obtain the company-required medical clearance to return to work, until six weeks following the birth. We think that the commission was entitled to conclude that the complainant was disabled from employment during the few days during that period when she was unable to perform routine household tasks.

We consequently conclude that the commission's determination of a total disability period of three weeks from August 2 to August 22, 1975 is supported by substantial evidence in the record and was correctly affirmed by the circuit court.

## ERISA PREEMPTION

In 1974 Congress enacted ERISA to provide a comprehensive federal regulatory mechanism for employee benefit plans on a nationwide basis. ERISA provides that it "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" specified in the federal act except those expressly exempted. 29 U.S.C. sec. 1144(a) at 594.

In *Goodyear Tire & Rubber Co. v. DILHR,* 87 Wis.2d at 72, 273 N.W.2d at 795, this court recognized that sec. 111.32(5)(g), Stats., which is that part of WFEA prohibiting sex discrimination by Wisconsin employers, "relates" to disability benefit plans provided to employees within the meaning of ERISA. We held, however, that Wisconsin's sex discrimination statute was exempt from, and not preempted by, the federal act. 87 Wis.2d at 72–73.

The company urges us to reconsider *Goodyear* and to hold that ERISA preempts the Wisconsin fair employment law "to the extent necessary to enable ERISA to be the sole regulator of employee benefit plans." It advances no arguments which were not analyzed and decided in *Goodyear.* We find no reason to reconsider our holding in that case.

## EQUAL PAY ACT

The company contends that providing pregnancy-related disability benefits to women may result, in a violation of the Equal Pay Act of 1973, which provides in part:

No employer having employees subject to any provisions of this section shall discriminate . . . between employees on the basis of sex *by paying wages* to employees in such establishment . . . for equal work on

jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, *except where such payment is made pursuant to* (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) *a differential based on any other factor other than sex. . . .* [Emphasis supplied.] 29 U.S.C. sec. 206(d)(1).

The company suggests that a disability plan covering pregnancy may be held to be the equivalent of "wages" under the Equal Pay Act. Since the coverage would benefit only female employees, and since no correlative form of "wages" is extended to male employees, it argues that such a plan may discriminate against male employees in violation of the act.

The company cites no authority for the proposition that fringe benefits such as disability pay plans constitute "wages" within the meaning of the Equal Pay Act. We find no case so holding. The Equal Pay Act was enacted in 1963 as an amendment to sec. 6 of the Fair Labor Standards Act of 1938, which governs the national minimum wage requirements. Its purpose was to ensure that women received equal wages for equal work.[2] No part of the section expressly pertains to forms of remuneration for employment other than wages.

The company relies on a single footnote in *General Electric Co. v. Gilbert,* 429 U.S. 125, 139 (1976), stating

[2] In *Corning Glass Works v. Brennan,* 417 U.S. 188, 195 (1974) the Supreme Court stated:

Congress' purpose in enacting the Equal Pay Act was to remedy what was perceived to be a serious and endemic problem of employment discrimination in private industry—the fact that the wage structure of "many segments of American industry has been based on an ancient but outmoded belief that a man, because of his role in society, should be paid more than a woman even though his duties are the same." S. Rep. No. 176, 88th Cong. 1st Sess., 1 (1963). The solution adopted was quite simple in principle: to require that "equal work will be rewarded by equal wages."

that the cost to the employer of insuring against the various risks covered by employee disability plans is "in essence, nothing more than extra compensation to the employees, in the form of fringe benefits." We think this reliance is misplaced. *Gilbert* did not deal with a construction of the Equal Pay Act but rather with sec. 703(a)(1) of Title VII of the Civil Rights Act of 1964, which prohibits discrimination with respect to *"compensation . . .* because of [an employee's] *. . .* sex." 42 U.S.C. sec. 2000e–2(a)(1). [Emphasis supplied.] In the later case of *Los Angeles Dept. of W. & P. v. Manhart,* 435 U.S. 702, 712, n. 23 (1978), the Supreme Court expressly refused to determine whether a similar form of fringe benefits—pension plans—constituted "wages" within the meaning of the Equal Pay Act.

Even if the Equal Pay Act is applicable to fringe benefits of employment, however, we are satisfied that it cannot properly be construed to prohibit the inclusion of pregnancy disability benefits in a group disability plan. In October 1978, Congress in effect reversed the United States Supreme Court's holding in *Gilbert, supra,* when it enacted the Pregnancy Disability Amendment to Title VII of the Civil Rights Act, 42 U.S.C. sec. 2000e(k) (Supp. 1979). The enactment, colloquially known as "the *Gilbert* amendment,"[3] expressly prohibits discrimination on the basis of pregnancy-related medical conditions and requires that:

[W]omen affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes, *including receipt of benefits under fringe benefit programs,* as other persons not so affected but similar in their ability or inability to work . . . [Emphasis supplied.]

We find no reason to suppose that the federal courts would interpret the Equal Pay Act as prohibiting an

[3] *See* Larson, 1 *Employment Discrimination: Sex,* sec. 38.21.

employer from providing the benefits it is required to provide under the Civil Rights Act, as amended. Several federal courts have observed that the Civil Rights Act and the Equal Pay Act share a similar purpose, that they must be construed in *pari materia,* and that neither should be construed to undermine the purpose of the other. *Di Salvo v. Chamber of Commerce of Greater Kansas City,* 416 F. Supp. 844 (W.D. Mo. 1976) ; *Laffey v. Northwest Airlines, Inc.,* 567 F.2d 429 (D.C. Cir. 1976) ; *Ammons v. Zia Co.,* 448 F.2d 117 (10th Cir. 1971) ; *Shultz v. Wheaton Glass Co.,* 421 F.2d 259 (3rd Cir. 1970), *cert. den.* 398 U.S. 905 (1970) ; *Hodgson v. Brookhaven Gen'l. Hosp.,* 436 F.2d 719 (5th Cir. 1970). *See also* Larson, 1 *Employment Discrimination: Sex,* sec. 33.10 *et seq.* (1979). Since the enactment of the *Gilbert* amendment, the extent to which a disability plan covering pregnancy may result in a "benefit package" worth more to female employees than to male employees must be viewed as a congressionally mandated disparity.

Moreover, even before the enactment of the *Gilbert* amendment, the Supreme Court rejected the equivalent of the company's position in the case in *Los Angeles Dept. of W. & P. v. Manhart,* 435 U.S. at 702. The case involved a group retirement pension plan to which women employees were required to contribute at a higher rate than male employees. The employer presented statistical evidence showing that women as a class live longer than men and could consequently be expected to receive greater benefits from the plan after retirement. Requiring men and women to contribute to the plan on an equal basis, it argued, would have the discriminatory effect of requiring male employees to "subsidize" female employees, in violation of the Civil Rights Act.

In *Manhart* the Supreme Court acknowledged that "an entirely gender-neutral system of contribution and benefits" would "distinguish in a crude way between male

and female pensioners, because of the difference in their average life spans." 435 U.S. at 713 n. 24. It held, however, that the disparity in treatment was based upon longevity, a "factor other than sex," and was therefore authorized by one of the four exceptions to the equal remuneration requirements of the Civil Rights and Equal Pay Acts.[4] "It is this sort of disparity—and not an explicitly gender-based differential—that the Equal Pay Act intended to authorize." 435 U.S. at 713, n. 24.

The Court said that the basic policy of the Civil Rights Act required a "focus on fairness to individuals rather than fairness to classes." 435 U.S. at 709. It found "no reason to believe that Congress intended a special definition of discrimination in the context of employee group insurance coverage," 435 U.S. at 710, and recognized that group plans inherently involve one class of persons subsidizing another.

[W]hen insurance risks are grouped, the better risks always subsidize the poorer risks. Healthy persons subsidize medical benefits for the less healthy; unmarried workers subsidize the pensions of married workers; persons who eat, drink, or smoke to excess may [be subsidized by] persons whose habits are more temperate. Treating different classes of risks as though they were the same for purposes of group insurance is a common practice which has never been considered inherently unfair. 435 U.S. at 710. (Footnote omitted.)

---

[4] The four exceptions under the Equal Pay Act, 29 U.S.C. sec. 206(d)(1), quoted in the text of this opinion at 12, were made applicable to all forms of "compensation" covered by Title VII of the Civil Rights Act by the Bennett Amendment which provides:

It shall not be an unlawful employment practice under this title . . . for any employer to differentiate upon the basis of sex in determining the amount of the wages or compensation paid or to be paid to employees of such employer if such differentiation is authorized by the provisions of section 6(d) of the Fair Labor Standards Act of 1938, as amended (29 U.S.C. sec. 206(d) [29 USCS sec. 206(d)]). 42 U.S.C. sec. 2000e-2(h).

The logic of *Manhart* applies with equal force to disability plans providing coverage for pregnancy-related conditions, as this court held in *Goodyear,* 87 Wis.2d at 56. It is obvious that only women will benefit directly from that coverage and that those women who become pregnant will be subsidized by those employees, including women, who do not. It is equally apparent that those who incur other gender-related disabilities due, for instance, to prostate or menopausal problems will be subsidized by co-employees who do not suffer from such disabilities. The disparity between the subsidized and the subsidizers in these examples is based on the factor of actual disability, however, and not on the factor of sex. As we said in *Goodyear,* 87 Wis.2d at 66, 273 N.W.2d at 792:

It matters not . . . that women, as a class, may in one year receive more dollars in benefits than men, as a class, or that the average woman may receive more than the average man. It does matter that individuals are treated as individuals, and equally in terms of compensation for disability even if they have disabilities arising out of factors peculiar to their sex.

We conclude that even if disability benefit plans constitute "wages" within the meaning of the Equal Pay Act, the inclusion of pregnancy-related benefits within such a plan does not violate the act.

*By the Court.*—Judgment affirmed.